**LAW OFFICES OF   RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiffs and the Proposed Classes***

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN COCHOIT, on behalf of herself, all others similarly situated, and the general public, | ) Case No. |
| | ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** |
| | ) |
| vs. | ) <u>DEMAND FOR JURY TRIAL</u> |
| | ) |
| SCHIFF NUTRITION INTERNATIONAL, INC., SCHIFF NUTRITION GROUP, INC., GANEDEN BIOTECH, INC., RECKITT BENCKISER LLC, | ) |
| | ) |
| Defendants. | ) |

Plaintiff MARILYN COCHOIT, by and through her attorneys of record, brings this action on behalf of herself and all others similarly situated and the general public against defendants GANEDEN BIOTECH, INC. ("Ganeden"), SCHIFF NUTRITION INTERNATIONAL, INC. and SCHIFF NUTRITION GROUP, INC. ("Schiff," collectively) and RECKITT BENCKISER LLC ("RB"). Plaintiff alleges the following upon her own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of her counsel:

## JURISDICTION AND VENUE

1.   This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005 because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of plaintiffs are citizens of states different than defendants Ganeden, Schiff and RB.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.  Further, on information and belief, greater than two-thirds of the Class members reside in states other than the states in which Ganeden, Schiff and RB are citizens.

2.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because defendants:

(i) are authorized to conduct business in this district and have intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(ii) do substantial business in this district;

(iii) advertise to consumers residing in this district, and

(iv) are subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

3.     This is a consumer protection class action seeking redress for consumers based on the false and misleading advertisements that Defendants Ganeden, Schiff and RB have made and continue to make about their over-the-counter "Digestive Advantage." Products. Through their marketing campaign and package labeling Defendants claim their products, which contain a proprietary "helpful" bacteria known as GanadenBC$^{30}$ (also referred to as "BC30"), improve and benefit the digestive and immune health of individuals who regularly consume them.  Specifically, Defendants claim that the BC30 bacteria in the Products are:

- "The Probiotic that Survives",
- **One hundred times** as "survivable" compared with bacteria in "yogurt and leading probiotics."

4.     Defendants' advertising cites to purported "simulated gastric studies supporting a "100x Better Survivability" claim, but such studies are nowhere described except in vague terms, nor do they exist in the published peer-reviewed scientific literature.

5.     Moreover, published studies, including studies sponsored by Defendants, indicate that a large fraction of the BC$^{30}$ spores fail to germinate under conditions found in the human gut, and would therefore remain dormant, passing out of the body without multiplying, notwithstanding any putative "survivability" ascribed to such spores by Defendants.

6.     Accordingly, Defendants representations are false, misleading and reasonably likely to deceive the public.

7.     Defendant Ganeden's Sustenex and Digestive Advantage brands were sold to defendant Schiff for $40 million in cash plus future royalties, (announced on June 2, 2011.) Schiff was in turn acquired by defendant RB in a deal worth $1.4 billion in or around November 2012.  Together, Defendants currently manufacture, market, distribute and sell health products known as: Digestive Advantage – Daily

-2-

Probiotic, Digestive Advantage – Probiotic Gummies, Digestive Advantage – Intensive Bowel Support, Digestive Advantage – Lactose Defense Formula, Digestive Advantage – Gas Defense Formula, Digestive Advantage – Constipation Formula, containing its proprietary bacteria, GanedenBC$^{30}$, (collectively, the "Products").

8.      Defendants have often claimed the Products delivered **"over 10 times more live cells than the leading fortified probiotic yogurt."** In recent years, however, Defendants have started claiming that the products had "**100x Better Survivability vs. Yogurt & leading Probiotics.**"

9.      Through an extensive and comprehensive nationwide marketing campaign, Defendants claim that their Products are scientifically proven to help "support" consumers' health, benefits which are purportedly superior to other products currently on the market.  Ganeden claims in its advertising that these exclusive health benefits result from the therapeutic effect of GanedenBC$^{30}$, a so-called patented strain of "probiotic" bacteria that is unique to the Products.

10.      Although Ganeden provides several studies and abstracts that describe experiments relating to GanedenBC$^{30}$, none of the studies cited demonstrate data that support Ganeden's claims and fall well short of the so-called "clinical proof" described on its packaging.  Accordingly, Ganeden's representations are false, misleading and reasonably likely to deceive the public.

11.      Ganeden's own studies fail to support this advertising message, and a number of the studies contradict Ganeden's claims.  It is not proven that Ganeden's proprietary strain of probiotic bacteria delivers the unique health benefits claimed in its advertising campaign.  Nonetheless, as a result of Ganeden's deceptive advertising campaign, Ganeden is able to reap significant profits from the sale of its Products.

12.      In 2003, Ganeden began marketing Digestive Advantage, a daily supplement containing GanedenBC$^{30}$ that includes the brands Intensive Bowel

Support, Lactose Defense Formula, Gas Defense Formula and Daily Constipation Formula.   In 2003, Ganeden also launched a marketing campaign for Sustenex Daily Probiotic capsules, and, around the same time, Ganeden also launched Sustenex Probiotic Gummies.   Sometime after 2011, defendant Schiff discontinued the Sustenex brand and rebranded Daily Probiotic capsules and Probiotic Gummies as Digestive Advantage brands.

13.   Daily Probiotic and Probiotic Gummies ("100x Products"), are now packaged with claims of "100x Better Survivability vs. Yogurt and leading Probiotics‡," also claiming that "Digestive Advantage is the daily probiotics supplement that survives 100 times better than yogurt and leading probiotics‡" where the "‡" (double dagger) symbol refers to the following language: "Based on median % survivability of Digestive Advantage® probiotic vs. leading probiotic supplements and 19 probiotic yogurts in simulated gastric pH for 2 hours."

(*See, e.g.,* http://www.digestiveadvantage.com/probiotic-supplements/daily-use/digestive-advantage-daily-probiotic-capsules/.)

14.   Between 2003 and 2010, Ganeden introduced 9 new products and sold nearly 400 million doses of its products through over 70,000 retail outlets. Ganeden's sale of the Sustenex and Digestive Advantage brands to defendant Schiff valued them at $40 million plus royalties. Ganeden also licenses its patented probiotic bacteria, GanedenBC[30] for use in commercial food and beverage applications, functional foods, medical food products, dietary supplements, nutraceuticals and in animal health industries.

15.   Plaintiff brings this action on behalf of herself and other similarly situated consumers in the United States to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products.

-4-

16.     Plaintiff alleges violations of California's consumer protection laws, including common law fraud by omission and deceit, violations of the Unfair Competition Law (Cal. Bus & Prof. Code § 17200), Violations of the False Advertising Law (Cal. Bus. & Prof Code § 17500), and violations of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750).

## PARTIES

17.     Plaintiff Marilyn Cochoit purchased the Schiff Digestive Advantage Gummies with Ganaden BC30 (120 count) on February 16, 2016, from a Costco store located in Orange County, California. Plaintiff Cochoit paid approximately $19.49 for her purchase of the product. Plaintiff Cochoit purchased the product in reliance on the labeling claims, including statements that the Ganaden BC30 probiotics in the product would "survive" the digestive tract and thereby provide the touted "Digestive Advantage" health benefits. Plaintiff Cochoit would not have purchased the product at all, or would have paid less for the product, had she known the truth about the Schiff Digestive Advantage products. During the Class period, plaintiff was exposed to and saw Defendants' claims, purchased the product in reliance on these claims, and suffered injury in fact as a result of the unfair competition described herein.

18.     On information and belief, defendant Ganeden Biotech, Inc. ("Ganeden"), is a privately-held company, founded in 1997, based in Cleveland, Ohio, incorporated in Delaware, and became the largest seller of over-the-counter probiotics in the United States through its Digestive Advantage® line brand of products.  The brand was sold to defendant Schiff and is currently marketed and distributed by defendant RB.   Ganeden claims that its proprietary $BC^{30}$ bacteria products are "100 times" as "survivable" compared to probiotic yogurt or as compared to "leading probiotic supplements and 19 probiotic yogurts."

19.     Ganeden markets itself as a "science-focused company" dedicated to bringing purportedly superior probiotics to markets that have otherwise been

unmet by traditional solutions.  Digestive Advantage products are available at over 70,000 retailers nationwide, and within the State of California, including Wal–Mart, CVS/pharmacy, Walgreens, Rite–Aid, Stop & Shop, Giant, Publix, Kroger, and Target.   Products related to the Sustenex (now-rebranded), Digestive Advantage and the (discontinued) EnLiven yogurt brands generated net revenue of approximately $17 million for Ganeden the year ended December 31, 2010, prior to the brands' acquisition by defendant Schiff in 2011 for $40 million in cash. Ganeden continues to collect royalties on $BC^{30}$ sold in Digestive Advantage products.  Defendants currently promote, market, distribute and sell Ganeden's $BC^{30}$ in Digestive Advantage products throughout the United States, including to tens of thousands of consumers in California.

20.    On information and belief, defendant Schiff Nutritional International, Inc. is headquartered in Salt Lake City, Utah with offices located at 2002 South 5070 West Drive and was incorporated in Delaware in August 1996.   Schiff International develops, manufactures, markets and distributes branded and private label vitamins, nutritional supplements and nutrition bars in the United States and throughout the world.   Schiff's portfolio of well-known brands includes Move Free®, Schiff® Vitamins, MegaRed®, Mega-D3™, Tiger's Milk® and Fi-Bar®.

21.    On information and belief, defendant Schiff Nutrition Group, Inc. is headquartered in Salt Lake City, Utah with offices located at 2002 South 5070 West Drive and was incorporated in Utah in May 1996.  Schiff Group develops, manufactures, markets and distributes branded and private label vitamins, nutritional supplements and nutrition bars in the United States and throughout the world.  Schiff's portfolio of well-known brands includes Move Free®, Schiff® Vitamins, MegaRed®, Mega-D3™, Tiger's Milk® and Fi-Bar®.

22.    In November 2012, defendant Schiff was acquired by Reckitt Benckiser Plc, a UK-based international conglomerate headquartered in Slough, England.    Reckitt Benckiser's brands include French's Mustard, Air Wick,

Clearasil, Calgon and Lysol.   Currently, Schiff/Ganeden website pages are labeled "© 2016 Reckitt Benckiser."

23.    Defendant Reckitt Benckiser LLC ("RB") is headquartered at 399 Interpace Parkway, P.O. Box 225, Parsippany, New Jersey, 07054.   RB is a Delaware limited liability company formed in 1977.   RB is a subsidiary of Reckitt Benckiser Group Plc.

## FACTUAL ALLEGATIONS

24.    In 2003, Ganeden announced the release of Sustenex Probiotic Caps and Digestive Advantage, the first of Ganeden's products to purportedly promote digestive and immune health benefits employing its "proprietary strain of GanedenBC$^{30}$" to deliver good bacteria to the digestive system and naturally defend against occasional constipation and irregularity issues and provide immune health benefits.   Since that time, Ganeden has consistently conveyed the message to consumers throughout the United States that its proprietary probiotic bacteria deliver health benefits, claims which are contradicted by data from scientific studies.

25.    Digestive Advantage encompasses a broad range of products designed to cover a wide swath of consumers interested in alleviating symptoms related to bloating, constipation, gas, irritable bowel syndrome, lactose intolerance, among other maladies related to the digestive tract. In sum, Defendants' claims cover a significant consumer base and falsely claim digestive and immune health benefits.

26.    In its advertising campaign Defendants asserts that the GanedenBC$^{30}$ spores contained in the Products are uniquely durable, claiming that "the probiotic used in Digestive Advantage is protected by a hardened layer of proteins, which allows it to survive the harsh environment of the stomach better than other probiotics and reach the intestines to promote digestive and immune health."

27.    Further, "the composition of GanedenBC$^{30}$ differentiates itself from other probiotics by its ability to survive manufacturing processes, shelf life,

-7-

stomach acids and intestinal bile."

28.    The durability of GanedenBC$^{30}$, however, is due to the fact that Ganeden produces and sells BC$^{30}$ (*Bacillus coagulans*) in the form of spores, which, although theoretically *viable* under ideal conditions, exist in a *dormant* form, from which they are not easily roused:

> "*Bacillus coagulans* is found in two forms, the <u>vegetative form</u> which is a regular bacterial cell similar in structure to other probiotic bacteria and the <u>spore form</u> which can withstand many conditions such as heat, pressure and extreme acid or alkaline conditions, any of which may kill vegetative cells."

29.    For the dormant spore form of BC$^{30}$ to transform into the vegetative form requires a crucial step - *germination.*  Defendants, however, avoid discussing germination issues and simply contends that GanedenBC$^{30}$ is "amazing because: IT SURVIVES. Because GandenBC30 is a spore-forming strain, it survives manufacturing processes and stomach acids to help deliver beneficial bacteria more effectively to your digestive system." (*See* http;//www.ganedenbc30.com/amazing.)

30.    In fact, studies show that BC$^{30}$'s spore-forming protection is so effective that only a small fraction of spores will actually germinate within the body while most will pass completely through the digestive tract and out of the body entirely.  These spores have "survived," in a sense, by remaining as dormant spores, but can provide no benefits to the consumer, who is misled to believe that BC$^{30}$'s "survival" is synonymous with retention of vegetative bacteria in the human gut.

31.    Ganeden further induces purchase of BC$^{30}$ by advertising: "IT DELIVERS LIVE CELLS 10 TIMES MORE EFFECTIVELY THAN COMMON PROBIOTIC YOGURT. In an independent lab study of a simulated gastric environment with a pH of 2.0 for two hours, GanedenBC$^{30}$ delivered live cells 10 times more effectively than common probiotic yogurts." (*See*

-8-

http://www.ganedenbc30.com/amazing.)  Defendants provide no information about this study nor regarding what "10 times more effectively" means.   Further, this particular statement is notably misleading to consumers because it appears to be comparing a BC$^{30}$ dried spore preparation with "common probiotic yogurts," which is entirely inapposite.

32.   Defendants fail to offer any definitive study data which would suggest that GanedenBC$^{30}$, at the concentrations delivered in its products, actually provides the average healthy consumer any benefits whatsoever.  Defendants also claim that GanedenBC$^{30}$ is "the Probiotic that Survives" and yet cite to inapposite unpublished *in vivo* studies on survivability data.  Meanwhile, other studies show that GanedenBC$^{30}$ is unlikely to multiply in the GI tract as claimed or that any health benefits are conveyed to any extent whatsoever.

33.   Further, marketing of Defendants' Products together as a group on numerous sites such as www.wal-mart.com and amazon.com results in multiple purchases of the Products by individuals, leading to redundant, and highly profitable, double and triple sales of the same "active ingredient" to individual consumers.

34.   Every one of the Products contains a single "probiotic", namely GanedenBC$^{30}$, purported to responsible for health benefits to consumers.

35.   Variable amounts of GanedenBC$^{30}$ are combined with small amounts of other ingredients in the Products.

### THE DIGESTIVE ADVANTAGE "100X PRODUCTS"

36.   The Schiff Digestive Advantage product line includes the "Probiotic Gummies," the "Daily Probiotic," the "Lactose Defense Formula," the "Gas Defense Formula," the "Intensive Bowel Defense" Formula, and the "Constipation Formula." Each of these products are substantially similar in that they contain the same "Ganeden BC30" probiotic proprietary ingredient and the packaging for each of the products include similar labeling claims like "Digestive Advantage," "THE

1  PROBIOTIC THAT SURVIVES," "Deliver Good Bacteria Where You Need it,"

2  and "Quality Guarantee."

3  37.    The front label on each container of Digestive Advantage, Daily Probiotic,

4  substantially appears as follows:



38.    The front label of Digestive Advantage Daily Probiotic makes the following claims:

(a)    "The Probiotic that Survives." and

(b)    "100x Better Survivability vs. Yogurt & leading Probiotics‡."

39.    On information and belief, the "‡" (double dagger) symbol on the labeling of the 100x Products, including Daily Probiotic refers to language elsewhere on the label substantially similar to the following:

"‡Based on median % survivability of Digestive Advantage® probiotic vs. leading probiotic supplements and 19 probiotic yogurts in simulated gastric pH for 2 hours. Survivability and delivery of probiotic cells to the small &

-10-

large intestines is one of the several factors influencing overall product effect."

40.    The rear label on each container of Digestive Advantage, Daily Probiotic, substantially appears as follows:



41.    The rear panel labeling of Digestive Advantage, Daily Probiotic, makes the following claims:

(a) "…**Digestive Advantage** contains **BC**$^{30}$, a probiotic that survives 100x better than leading probiotics and yogurt so it can deliver good bacteria where you need it [*underlining added*],‡" and

(b) "The probiotic used in **Digestive Advantage** is protected by a hardened layer of proteins, which allow it to survive the harsh

-11-

environment of the stomach better than other probiotics and
reach the intestines to promote digestive and immune health
[*underlining added*]."

42.    The front label on each container of Digestive Advantage, Probiotic
Gummies, substantially appears as follows:



43.    The front label of Digestive Advantage Probiotic Gummies makes the
following claims:

(c)    "The Probiotic that Survives." and

(d)    "100x Better Survivability vs. Yogurt & leading Probiotics‡."

44.    On information and belief, the "‡" (double dagger) symbol on the
labeling of the 100x Products, including Probiotic Gummies refers to language
elsewhere on the label substantially similar to the following:

"‡Based on median % survivability of Digestive Advantage® probiotic vs. leading probiotic supplements and 19 probiotic yogurts in simulated gastric pH for 2 hours. Survivability and delivery of probiotic cells to the small & large intestines is one of the several factors influencing overall product effect."

45. In general, Ganeden claims that GanedenBC[30] has been shown to survive the harsh acidic environment of the digestive tract and "reaches your intestines alive" and will "survive the harsh environment of the stomach … and reach the intestines to promote digestive and immune health," delivering "good bacteria where you need it." However, these claims too are false and misleading. For example, Defendants seem to ignore the results of a particular survivability study (*Beneficial Microbes 1 (1): 31-36 (2009)*) conducted *in vitro*, and sponsored by Ganeden, concluding that the "survival of GanedenBC[30] was high (70%), although *germination* of the spores was minimal (<10%) under the conditions tested." Given the extremely low germination of bacterial spores observed, in addition to the *in vitro* nature of the study, any realistic extrapolation to survivability *in vivo* is impossible to calculate with any degree of scientific or statistical accuracy.

46. Defendants' statements are false and mislead the public into the belief that consumption of the Products will populate consumers digestive tracks with vegetative bacteria derived from germinated spores of BC[30]. Despite a complete lack of scientific or clinical data to support its claims, Ganeden disregards accurate advertising in the interest of maximizing profits and charging consumers a premium for its health supplement products.

47. The effectiveness of Defendants' marketing campaign is also evident. For example, Wal-mart.com, Amazon.com, among other web sites, advertise Defendants' various Digestive Advantage products together, when in fact all contain the same single "probiotic," GanedenBC[30]. Accordingly, profits to

-13-

Defendants arising from its deceptive advertising are significant and result from multiple sales of the Products to a single consumer.

48.    Defendants' statements about the ability of its proprietary strain of bacteria to survive the gastrointestinal system in sufficient numbers to convey probiotic effects are also unsubstantiated, false and misleading. In fact, Ganeden's own studies show an extraordinarily low number of bacterial spores which actually germinate (>10%) in the gastrointestinal tract.  On a practical level, in order for GanedenBC$^{30}$ to deliver any purported benefit, it must first germinate from the spores contained in Ganeden's products.  In the presence of a low germination percentage, the degree of bacterial survival in the digestive system largely becomes irrelevant since the number of bacteria actually delivered to the GI tract is so low that any theoretical benefit becomes an impossibility.

49.    Nonetheless, Defendants claims that their probiotic bacteria not only "survive," but do so "ten times" or even "one hundred times" better than other probiotics.  Defendants further convey and reinforce this claim by prominently printing on its labels the words "The Probiotic that Survives" and on its products.

50.    Further, on dosing information for every package of, for example, Digestive Advantage Daily Probiotic Defendants state that each capsule of Digestive Advantage Daily Probiotic Caps contains "2 billion *viable* cells" inferring to the consuming public that these cultures remain active in the digestive tract where they have various purported positive effects on the human body:

-14-

## Supplement Facts

Serving Size One (1) Capsule

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Calcium (as calcium carbonate) | 140 mg | 14% |
| BC[30] *Bacillus coagulans* GBI-30, 6086 | 2 billion viable cells | † |

† Daily Value not established

51.     In fact, all of the Products display within the Supplement facts panel the descriptor "viable cells," which serves to deceive consumers where Defendants are in fact selling *dormant* bacterial *spores,* which are only *potentially viable* cells. In several studies conducted on other similar bacteria it has been shown that only 10%-51.2% of the cultures have been found to survive in the small intestine and just 28.4% in feces.  In other studies, data supports the conclusion that even less than these amounts survive the intestinal tract.

52.     Defendants also claim that their proprietary bacterial spores not only survive the harsh acidic environment of the stomach, but actually germinate and proliferate in the GI tract to populate the intestines.  Thus, Defendants claim, enables the Products to "deliver good bacteria where you need it" and "reach the intestines to promote digestive and immune health," without a single study that demonstrates that its bacteria both populates and proliferates in the digestive tract of healthy humans.

**EVIDENCE SHOWS THAT THE PRODUCTS ARE INEFFECTIVE**

53.     According to a June 2006 report on probiotics published by the American Academy of Microbiology, "there is no conclusive evidence that altering the microbiota of a healthy human adult is beneficial."  The report, entitled "Probiotic Microbes: The Scientific Basis," was prepared by the American

-15-

Academy of Microbiology, a leadership group of the American Society of Microbiology, which is the leading professional association of microbiologists.

54.     Defendants deceptively conveys the marketing message that the Products deliver unique benefits however fails to provide the consumer with a single bit of information that would support its claims.

55.     Compounding the deception, Defendants claim **10 times better survivability** for the $BC^{30}$ spores in one set of four Digestive Advantage products (the 10x Products herein) while blithely going on the assert **100 times better survivability** for the same $BC^{30}$ in another pair of Digestive Advantage products (the 100x Products herein).   Defendants claim of "100 times" better survivability is patently false inasmuch as all products contain identical preparations of $BC^{30}$ spores.   Moreover, the Digestive Advantage products now claimed to have "100 times" better survivability where merely claimed to have "10 times" better survivability just a few years prior when Defendants marketed them as Sustenex brands.

56.     Although Defendants adds a single disclaimer communicating that its Products are not evaluated by the Food and Drug Administration, the advertising employed by Defendants overwhelmingly conveys to the consumer that its Products will improve one's digestive health and immune system function, purportedly based on sound scientific principles and the positive benefits of probiotics.

57.     In addition, several studies indicate that survivability of probiotics is at best, difficult to measure.   Ganeden's own studies, as set forth above herein, demonstrated that germination of the GanedenBC$^{30}$ bacterial spore was less than 10% of the ingested concentration, making percent survival *in vivo* virtually impossible to calculate with any degree of scientific accuracy.

58.     *In vitro* and animal testing form the basis for a majority of the claims of survivability of GanedenBC$^{30}$.   This type of testing however does not, and

-16-

cannot, provide an adequate basis for the claims that Ganeden makes for the effect of GanedenBC$^{30}$ in people.  According to a report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002), while *in vitro* tests "are critical to assess the safety of probiotic microbes," the currently available tests "are not fully adequate to predict the functionality of probiotic microorganisms in the human body."  The Working Group encourages the study of probiotics in animals in those cases where appropriate animal models exist, but animal studies are not a substitute for human trials.

59.    According to the report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002): "Probiotics for human use will require substantiation of efficacy with human trials. . . .  The principal outcome of efficacy studies on probiotics should be proven benefits in human trials, such as statistically and biologically significant improvement in condition, symptoms, signs, well-being or quality of life; reduced risk of disease or longer time to next occurrence; or faster recovery from illness."

60.    Defendants' claims about the benefits of daily consumption of GanedenBC$^{30}$ are not substantiated by the vast majority of generally accepted scientific literature currently available relating to probiotics.  Despite Defendant's advertisements and websites depicting the benefits of GanedenBC$^{30}$, few if any studies have looked at beneficial effects on healthy children and adults in order to determine if probiotics at the concentrations delivered by Ganeden's products convey any health benefits whatsoever.

61.    Ganeden's claim that the BC$^{30}$ bacteria germinate and survive the harsh acidic environment of the GI tract is not substantiated by the prevailing and generally accepted scientific literature relating to probiotics.  Aside from Ganeden's own studies which show a less than 10% germination rate of its

bacterial spores, several studies relating to probiotics generally, show that between 10 and 50% of "probiotic" bacteria are rendered non-viable in the GI tract due to the harsh acidic and variable pH environment.

62.    Of the remaining "viable" spores, only those that actually *germinate* will have any chance of multiplying within the human intestines.   Assuming a 100% *survival* rate of "viable" spores and a 10% germination rate for GanedenBC$^{30}$, in accordance with Ganeden's own studies, in a 2 billion cell dose, it can be reasonably estimated that at most, 200 million of Ganeden's probiotic cells might actually reach the GI tract as cells capable of multiplying in a normal individual.

63.    In a worst case scenario, presuming only a 10% *survival* rate, only 20 million probiotic cells would ultimately *germinate* within the GI tract, far less than would be expected to convey any effects on human health even by Defendants' own claims. Numerous studies suggest that if there are any health benefits associated with probiotics, concentrations well above the 2-3 billion cells would be necessary to bring about any such benefits.   Despite inadequate and inapposite testing, Defendants continues to unequivocally claim that because of its specially formulated and unique bacteria in the Products, the Products will deliver health benefits other products cannot.

## FRAUDULENT OMISSIONS

64.    Defendants also fraudulently conceal material facts from consumers, like the fact that the so-called "active" probiotics in the products do not settle, colonize, or germinate in the human stomach or intestines and thus do not provide a "Digestive Advantage."

65.    In fact, in a double-blind, placebo controlled, parallel study evaluating the safety of Bacillus coagulans, it was concluded that Bacillus coagulans "had no statistically significant effects on the stomach during the 30 days of supplementation." Other studies have similarly shown that the active ingredient in

-18-

the Schiff Digestive Advantage products do not provide any digestive health benefits because the probiotics cannot colonize in the stomach or alter the gut flora in any meaningful way. Moreover, the probiotics found in Defendants' products do not survive in the real-world conditions that are present in the human stomach and intestines. Therefore, Defendants' claim that the Schiff Digestive Advantage products contain "THE PROBIOTIC THAT SURVIVES" is patently false or likely to deceive reasonable consumers.

66.   The Digestive Advantage products do not provide the touted "digestive and immune health" benefits regardless of whether the probiotics survive because the probiotics are not able to settle and colonize in the harsh environment of the human stomach. Defendants have a duty to disclose this material fact to consumers based on their superior knowledge of the products, but Defendants have failed to do so.

67.   Additionally, Defendants have made a partial disclosure of fact by stating, in small text on the back of the packaging, that "**_Survivability and delivery of probiotic cells to the large and small intestines is one of several factors influencing overall product effect_**." (emphasis added). But this partial disclosure is likely to mislead consumers because Defendants suppressed other material facts like one other essential factor is the colonization and settlement of the probiotics in the intestines is necessary for the probiotics to have a "Digestive Advantage" effect. This is both a fraudulent omission and an active misrepresentation because Defendants also make false statements of fact that contradict their partial disclosure— i.e. "Because the probiotic in Digestive Advantage reaches your intestines alive, they are able to provide digestive and immune health benefits where you need them."

-19-

## **CLASS ACTION ALLEGATIONS**

68.      Plaintiff brings this nationwide class action on behalf of himself and the proposed plaintiff Class members pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

> All persons in the United States who purchased the Schiff Digestive Advantage Products with the "100x better survivability" claims for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated.  Excluded from the Class are defendant's officers, directors and employees.

69.      The Class comprises many tens of thousands of consumers throughout California and the United States.  The Class is so numerous that joinder of all members of the Class is impracticable.  There are questions of law and fact common to the Class.  The common questions include:

(a) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(b) whether Defendants' alleged conduct violates public policy;

(c) whether the alleged conduct constitutes violations of the laws asserted herein;

(d) whether Defendants engaged in false or misleading advertising;

(e) whether plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(f) whether plaintiff and Class members are entitled to an award of punitive damages; and

(g) whether plaintiff and Class members are entitled to declaratory and injunctive relief.

70.      Plaintiff's claims are typical of the claims of the proposed Class, and plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests antagonistic to those of the

-20-

Class.  Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.  The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

71.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.  The trial and the litigation of plaintiff's claims are manageable.

72.    Unless a class is certified, defendant will retain monies received as a result of its conduct that was taken from plaintiff and proposed Class members. Unless a class-wide injunction is issued, defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

73.    Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

## COUNT I
### FRAUD BY OMISSION

74.    Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

75.    Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and members of the Class to purchase the Products. Specifically, Defendants actively concealed the truth about the products by not disclosing all facts about the nature of the probiotics in the products, including material facts like the probiotics must germinate or cultivate in the stomach to have an effect, rather than just "survive" in the stomach.

-21-

76.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

77.    Plaintiff and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

78.    Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

## COUNT II
### VIOLATION OF THE UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. § 17200)

79.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

80.    California Business and Professions Code §17200 prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

81.    California Business & Professions Code §17200 also prohibits any "unlawful . . . business act or practice."  Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein.

82.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

83.    California Business & Professions Code §17200 also prohibits any "unfair . . . business act or practice."

84.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §17200 *et seq*. in that its

-22-

conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

85.    As stated in this Complaint, plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.   Plaintiff asserts violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of California Business & Professions Code §17200 *et seq.*

86.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

87.    Business & Professions Code §17200 also prohibits any "fraudulent business act or practice."

88.    Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200.

89.    Defendants' conduct caused and continues to cause substantial injury to plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result of Ganeden's unfair conduct.

90.    Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling plaintiff to judgment and equitable relief against defendant, as set forth in the Prayer for Relief.

91.    Additionally, pursuant to Business & Professions Code §17203, plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

# COUNT III
## VIOLATIONS OF THE FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. § 17500)

92.     Plaintiff incorporates by reference and re-allege each and every allegation set forth above as though fully set forth herein.

93.     Plaintiff brings this claim on behalf of the Class against Defendants for their violations of California's False Advertising Law, Cal. Bus & Prof. Code §§ 17500, et seq.

94.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendants' actions as set forth herein.   Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance upon Defendants' marketing claims.   Plaintiff used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

95.     Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, et seq. because Defendants advertised the Products Plaintiff purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

96.     Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

97.     Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

98.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of

-24-

unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

## COUNT IV

## VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
(Cal. Civ. Code § 1750)

99.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

100.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"). Plaintiff is a consumer as defined by California Civil Code §1761(d).  The Products are goods within the meaning of the Act.

101.   Defendants violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

(5) Representing that [the Products have] . . . characteristics, . . . uses [or] benefits . . . which they do not have . . . . * * *

(7) Representing that [the Products] are of a particular standard, quality or grade . . . if they are of another. * * *

(9) Advertising goods . . . with intent not to sell them as advertised. * * *

(16) Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

102.   Defendants violated the Act by representing through its advertisements the Products as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

103.   Pursuant to §1782 et seq. of the Act, plaintiff notified defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that defendant rectify the problems associated with the actions detailed

-25-

above and give notice to all affected consumers of its intent to so act.

104. Plaintiffs and other members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of its products.

105. Plaintiffs and other members of the Class were deceived by Defendants' representations about the quality and attributes of its products, including but not limited to the purported digestive health benefits of its Products, that its Products "boost" the immune system," and that its Products "proliferates in the GI tract to 'populate' the intestines 'beneficial' bacteria, among other false claims. Plaintiffs and other Class members would not have purchased the Products had they known Defendants claims were either unfounded or untrue, and the true nature of the Products.

106. Pursuant to California Civil Code §1782(d), plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of defendant.

107. If defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against all defendants as to each and every cause of action, including:

A. An order declaring this action to be a proper Class Action and requiring defendants to bear the costs of class notice;

B. An order awarding plaintiff and the proposed Class members damages in the amount to be determined at trial;

C. An order awarding restitution and disgorgement of Defendants'

-26-

1    revenues to plaintiff and the proposed Class members;

2    D.    An order awarding declaratory and injunctive relief as permitted

3          by law or equity, including; enjoining defendant from continuing

4          the unlawful practices as set forth herein, and directing defendant

5          to identify, with Court supervision, victims of its conduct and pay

6          them restitution and disgorgement of all monies acquired by

7          defendant by means of any act or practice declared by this Court

8          to be wrongful;

9    E.    An order compelling Defendants to engage in a corrective

10         advertising campaign to inform the public concerning the true

11         nature of its products;

12   F.    An award for punitive damages;

13   G.    An order awarding attorneys' fees and costs; and

14   H.    An order providing for all other such further relief as may be just

15         and proper.

16                              **JURY DEMAND**

17   Plaintiff hereby demands a trial by jury on all issues so triable.

18

19   Dated:      July 25, 2016

20                                      /s/ *Ronald A. Marron*
                                        Ronald A. Marron

21

22                                      **THE LAW OFFICES OF**
                                        **RONALD A. MARRON**
23                                      Ronald A. Marron
                                        *ron@consumersadvocates.com*
24                                      651 Arroyo Drive
                                        San Diego, California 92103
25                                      Telephone: (619) 696-9006
                                        Facsimile: (619) 564-6665
26
                                        ***Counsel for Plaintiff and the Proposed***
27                                      ***Class***

28

-27-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT