1   MANATT, PHELPS & PHILLIPS, LLP
2   ROBERT H. PLATT (SBN 108533)
      E-mail:  *RPlatt@manatt.com*
3   ADRIANNE E. MARSHACK (SBN 253682)
      E-mail:  *AMarshack@manatt.com*
4   695 Town Center Drive, 14th Floor
    Costa Mesa, CA 92626
5   Telephone:  (714) 371-2500
    Facsimile:  (714) 371-2550
6
7   Attorneys for Defendant
    RECKITT BENCKISER LLC
8

9
10              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
11                    SOUTHERN DIVISION
12

| | |
|---|---|
| 13  MARILYN COCHOIT, on behalf of herself, all others similarly situated, 14  and the general public, | No.  8:16-cv-01371-CJC-KES |
| 15              Plaintiff, | Assigned to Judge Cormac J. Carney, Courtroom No. 9B |
| 16        vs. | **DEFENDANT RECKITT BENCKISER LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL** |
| 17  SCHIFF NUTRITION INTERNATIONAL, INC., SCHIFF 18  NUTRITION GROUP, INC., GANEDEN BIOTECH, INC., 19  RECKITT BENCKISER LLC, | |
| 20              Defendants. | **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL – APPLICATION PENDING [ECF NO. 52]** |
| 21 | |
| 22 | Hearing: |
| 23 | Date:  April 30, 2018 Time:  1:30 p.m. |
| 24 | Crtrm:  9B |
| 25 | |
| 26 | Complaint filed:  July 25, 2016 Trial Date:  September 25, 2018 |

27
28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

    A.    Summary of Argument .................................................................... 1

    B.    Summary of Relevant Facts ............................................................ 1

         1.    Probiotics 101 ................................................................... 1

         2.    Probiotic Consumers in the United States ...................... 2

         3.    Plaintiff's Allegations ...................................................... 3

         4.    Plaintiff's Counsel Filed a Nearly Identical Lawsuit in 2011 and Settled the Action, Expressly Allowing Advertising That He Now Challenges ................................ 4

         5.    $BC^{30}$ and the Study on Which Plaintiff Bases Her Claims ........ 6

         6.    Plaintiff Marilyn Cochoit .................................................. 7

         7.    Plaintiff Only Came to the Belief That the Advertising for Digestive Advantage Was False and Misleading After Being Solicited by Attorney Marron ............................. 9

ARGUMENT ........................................................................................................ 10

I.    PLAINTIFF HAS FAILED TO MEET HER BURDEN TO ESTABLISH THE PROPRIETY OF CLASS CERTIFICATION .............. 10

    A.    Plaintiff's Counsel Has Conflicts With the Class and Is Therefore Inadequate Under Federal Rule of Civil Procedure 23(a) ............................................................................................. 10

    B.    Plaintiff Has Failed to Establish That the Requirements of Federal Rule of Civil Procedure 23(b)(2) Are Met ........................... 12

         1.    Plaintiff Lacks Standing to Obtain Injunctive Relief .............. 12

         2.    The "Restitution" Plaintiff Seeks Is Not "Incidental" to the Equitable Relief She Seeks, and Therefore Should Be Expressly Excluded From Any 23(b)(2) Class ........................ 13

i

**TABLE OF CONTENTS**
**(continued)**

Page

C.   The Requirements of Federal Rule of Civil Procedure 23(b)(3) Are Not Met Because Individual Issues Predominate Each of Plaintiffs' Claims ...................................................................... 14

    1.   Individual Issues Predominate Regarding Whether a Putative Class Member Is Entitled to Recover on Any of Plaintiff's Claims .................................................................. 15

    2.   Individual Issues Predominate in Plaintiff's Fraud Claim ...... 17

        a.   Individual Issues Predominate the Issue of Materiality .................................................................. 17

        b.   Individual Issues Predominate Regarding Reliance ....... 19

    3.   Individual Issues Predominate in Plaintiff's Claims for Violations of the UCL, FAL, and CLRA ................................. 20

        a.   Plaintiff Lacks Standing to Assert Her Claims Because She Did Not Rely on the Allegedly Misleading Advertising ................................................. 20

        b.   Individual Issues Predominate Regarding Whether Members of the Public Were Likely to Be Deceived .... 21

        c.   Individual Issues Predominate the Issues of Reliance and Materiality as Required by the CLRA ...... 22

    4.   Plaintiff Has Failed to Establish That Damages Can Be Measured on a Classwide Basis .............................................. 23

D.   Plaintiff Is Not Typical of the Class She Purports to Represent ........ 25

CONCLUSION ................................................................................................. 25

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Hyland's Inc.*,
  300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................... 24

*Allen v. Similasan Corp.*,
  306 F.R.D. 635 (S.D. Cal. 2015) ...................................................................... 24

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 14, 15

*Badella v. Deniro Mktg. LLC*,
  2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) .................................................... 22

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) .......................................................................... 21

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ....................................................................... 15, 17

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .......................................................................... 16

*Cabral v. Supple, LLC*,
  2016 WL 6693155 (C.D. Cal. Jan. 7, 2016) .................................................... 13

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................... passim

*Comden v. Superior Court*,
  20 Cal. 3d 906 (1978) ....................................................................................... 12

*Diermenjian v. Deutsche Bank, A.G.*,
  2010 WL 11505699 (C.D. Cal. May 13, 2010) ............................................... 16

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................................ 14

*Engalla v. Permanente Medical Group*,
  15 Cal. 4th 951 (1997) ...................................................................................... 19

*Fairbanks v. Farmers New World Life Ins. Co.*,
  197 Cal. App. 4th 544 (2011) ..................................................................... 17, 23

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................... 25

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iii

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
(continued)

Page

*Grochocinski v. Mayer Brown Rowe & Maw, LLP,*
719 F.3d 785 (7th Cir. 2013) ................................................................. 12

*Gutierrez v. Wells Fargo Bank, NA,*
704 F.3d 712 (9th Cir. 2012) ................................................................. 20

*Hall v. Time Inc.,*
158 Cal. App. 4th 847 (2008) ................................................................ 15

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .............................................................. 11

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ................................................................. 25

*Hodgers-Durgin v. de la Vina,*
199 F.3d 1037 (9th Cir. 1999) .............................................................. 13

*In re ConAgra Foods, Inc.,*
90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) ............................................ 13

*In re NJOY, Inc. Consumer Class Action Litigation,*
120 F. Supp. 3d 1050, 1118 (C.D. Cal. 2015) ................................. 24, 25

*In re POM Wonderful LLC,*
2014 WL 1225184 (C.D. Cal. March 25, 2014) ................................... 23

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009) ............................................................. 17, 20, 21

*In re Vioxx Class Cases,*
180 Cal. App. 4th 116 (2009) .......................................................... 20, 23

*Jones v. ConAgra Foods, Inc.,*
2014 WL 2702726 (N.D. Cal. June 13, 2014) ............................ 13, 21, 22

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) .......................................................................... 15

*Lanovaz v. Twinings North America, Inc.,*
2014 WL 1652338 (N.D. Cal. April 24, 2014) ..................................... 24

*Lavie v. Procter & Gamble Co.,*
105 Cal. App. 4th 496 (2003) ............................................................... 21

*Luman v. Theismann,*
647 Fed. Appx. 804 (9th Cir. 2016) ..................................................... 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
(continued)

Page

*Mazur v. eBay, Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ........................................ 16

*Mazza v. American Honda Motor Co. Inc.*,
   666 F.3d 581 (9th Cir. 2012) ............................................. 10

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ...................................................... 19

*Moreno v. Autozone, Inc.*,
   2007 WL 4287517(N.D. Cal. Dec. 6, 2007) ..................... 11

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ...................................... 14

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) ............................................ 15

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................... 17, 20, 22

*Thompson v. Automobile Club of Southern California*,
   217 Cal. App. 4th 719 (2013) ............................................ 18

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ........................................... 15

*Turcios v. Carma Laboratories, Inc.*,
   296 F.R.D. 638 (C.D. Cal. 2014) ...................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................... 10, 14

*Zinser v. Accufix Research Center, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...................................... 10, 13

**RULES**

Fed. R. Civ. Proc. 23 ............................................................ 10
Fed. R. Civ. Proc. 23(a) ................................................. 10, 11
Fed. R. Civ. Proc. 23(a)(1) .................................................. 10
Fed. R. Civ. Proc. 23(a)(2) ....................................... 10, 14, 25
Fed. R. Civ. Proc. 23(a)(4) .................................................. 11
Fed. R. Civ. Proc. 23(b) ...................................................... 10

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. Proc. 23(b)(2) ...................................................... 10, 12, 13, 14

Fed. R. Civ. Proc. 23(b)(3) .................................................................... passim

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

# PRELIMINARY STATEMENT

## A.  Summary of Argument

This lawsuit alleges that defendant Reckitt Benckiser LLC's ("RB") advertising for its probiotic product line is false and misleading because the active ingredient fails to germinate (*i.e.* become metabolically active and/or grow) in the intestines and therefore does not provide the digestive benefits advertised.  Putting aside that Plaintiff Marilyn Cochoit's ("Plaintiff") theory is demonstrably false, a class cannot be certified because Plaintiff's theory fails to take into account several key facts that raise significant individual issues, including:

- Probiotics, including the products at issue, provide health benefits *other than* digestive benefits, such as immune health benefits.  (Plaintiff's attorney is aware of this, having expressly agreed that the products' advertising could claim that the products support *immune* health);
- The probiotic strain at issue, $BC^{30}$, provides health benefits (including immune health benefits) even when it does not germinate;
- Consumers purchase probiotics for a variety of reasons other than for digestive benefits; and
- Most consumers do not understand how probiotics work, so would not know one way or another whether germination is relevant or material.

In addition to the predominance of individual issues raised by the above, class certification must be denied because Plaintiff has failed to demonstrate that (1) damages can be measured on a classwide basis; (2) her counsel—who has a conflict of interest with the proposed classes—is an adequate representative; or (3) Plaintiff is typical of the class she seeks to represent.  For these reasons, discussed further below, certification should be denied.

## B.  Summary of Relevant Facts

### 1.  Probiotics 101

Probiotics are live microorganisms that, when administered in adequate amounts, confer a health benefit on the host.  (Declaration of Daniel J. Merenstein ["Merenstein Decl."], ¶ 12; Ex. 2.)  Maintaining a balance between helpful and harmful bacteria is important to overall intestinal health and can have health

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

1

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

benefits beyond digestion, including aiding immunity and reducing inflammation, and contribute to a person's overall well-being.  (*Id.* at ¶ 13.)

More than 100 different strains of probiotics are currently being sold commercially.  (Declaration of David Keller ["Keller Decl."], ¶ 8.)  Each probiotic strain is genetically unique.  (Merenstein Decl., ¶ 14.)  Despite genetic differences, many probiotic strains work to positively impact gastrointestinal health.  For other (nondigestive) health benefits, such as immune effects, neurological effects, and endocrinological effects, benefits are typically strain-specific.  (*Id.*; Ex. 2.)  There is no magic percentage of germination of probiotic spores in the intestines that is required to provide digestive or other health benefits.  Nor is there an accepted minimum dose of spores necessary to provide health benefits.  (*Id.* at ¶¶ 15-17.)

## 2. Probiotic Consumers in the United States

"The 2016 Gallup Study of Probiotic & Prebiotic Consumers," conducted by Multi-Sponsor Surveys, Inc. (the "Gallup Survey") reported that ███████ in the United States are aware of probiotics, and approximately ███ make an effort to consume probiotics.  (Declaration of Linda DeStefano ["DeStefano Decl."], ¶¶ 5-6, 9; Ex. 1 at RB000633-34, RB000648.)  ███████ of probiotic consumers reported that probiotics had "████████████████████████████████"  (*Id.* at RB000662.)

The Gallup Survey found that ████████████████████████████████████

██████████████████. (*See* Ex. 1 to DeStefano Decl. at RB000640.)  For example:

• ██████████████████████████████████████████ (*id.*);

• ██████████████████████████████████████ (*id.* at RB000669);

• █████████████████████████████████████████ (*id.* at RB000640, RB000661-664); and

• █████████████████████████████████████████. *Id.* at RB000670.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

2

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1    Consumers reported a variety of "very important" reasons they use

2    probiotics, including ███████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████

5    ███████████. (*See* Ex. 1 to DeStefano Decl. at RB000642, RB000667; *see*

6    *also* RB000652.)  In addition, ██████████████████████████████████

7    ███████████████████. (*Id.* at RB000655; *see also* RB000638, RB000641.)

8    Slightly over ██████████ of consumers surveyed purchase probiotic

9    supplements online, and ████████ of the online shoppers buy their probiotic

10   supplements on Amazon ████. (*Id.* at RB000641, RB000643, RB000703.)

11   Consumers reported different reasons for choosing a specific probiotic supplement,

12   including ███████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ██████████. (*Id.* at RB000690.)  While ████████████████████ was listed by

15   ████ of consumer respondents as a reason they might switch probiotic brands, the

16   rates of settlement, colonization, and germination are not factors.  (*Id.* at

17   RB000695.)  Settlement, colonization, and germination are not mentioned

18   anywhere in the Gallup Survey as being considerations of consumers.  (*See id.*)

19   **3.    Plaintiff's Allegations**

20   This putative class action focuses on a probiotic product line sold under the

21   brand name "Digestive Advantage" (the "Products")[1] that contains a proprietary

22   and patented strain of probiotic bacteria known as BC[30] (formerly known as

23   "Ganeden BC[30]").  (*See* ECF No. 1 at ¶ 7, 9.)  The theory underlying Plaintiff's

24   claims is that the advertising claiming that the Products "provide digestive health

25   benefits" and have "100x Better Survivability vs. Yogurt & leading Probiotics"[2] are

26

27   [1] Plaintiff seeks to certify classes of consumers who purchased <u>two</u> products in the
     product line.  (*See* ECF No. 46-1 at 2:9-11, 2:22-24, 3:25-28 [footnote 2].)

28   [2] Plaintiff does *not* challenge the "100x better survivability" claim as being actually

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

3                   DEFENDANT RECKITT BENCKISER LLC'S
                    OPPOSITION TO PLAINTIFF'S MOTION
                    FOR CLASS CERTIFICATION

false and misleading because the BC[30] "spores fail to germinate in the human stomach[3] and therefore cannot provide the advertised digestive health benefits." (ECF No. 44-1 [Motion] at 1:4-9, 4:4-8; ECF No. [Complaint] 1 at ¶ 5.)  Plaintiff's omission claim alleges that RB failed to tell consumers that BC[30] does not "settle, colonize, or germinate in the human stomach or intestines and thus do[es] not provide a 'Digestive Advantage.'"  (ECF No. 44-1 at 4:14-17; ECF No. 1 at ¶ 64.)

### 4.    Plaintiff's Counsel Filed a Nearly Identical Lawsuit in 2011 and Settled the Action, Expressly Allowing Advertising That He Now Challenges

On July 1, 2011, Plaintiff's current counsel, Ron Marron, filed a putative nationwide class action in the U.S. District Court for the Southern District of California (Case No. 3:11-cv-01471-W-NLS) (the "*Burton* Action") alleging false advertising in connection with the same products that are at issue in this lawsuit.[4]

Like the Complaint in this action, the *Burton* First Amended Complaint ("FAC") was aimed at those products containing the BC[30] probiotic.  (Declaration of Adrianne E. Marshack ("Marshack Decl."), ¶ 3 Ex. 1 at ¶ 5.)  Also like the Complaint in this action, the *Burton* FAC alleged that the Products did not provide digestive benefits as advertised.  (*Id.* at ¶¶ 6-9, 18, 23, 27-28, 31, 37, 55-56, 72.)  Additionally, the *Burton* FAC specifically challenged the defendants' claims about the survivability of BC[30] in the intestines and BC[30]'s alleged failure to germinate in sufficient numbers to provide any benefit.  (*Id.* at ¶¶ 23, 62, 73.)  The *Burton* FAC also relied on the identical study that Plaintiff relies on in this action to support the

---

false.  (*See* ECF No. 44-1.)

[3] Probiotics do not germinate in the stomach; they germinate in the intestines, where there are growth sources.  (Keller Decl., ¶ 7, fn. 5; *see also* Declaration of Adrianne E. Marshack ("Marshack Decl."), ¶ 11; Ex. 6 [Cochoit Depo. Tr.] 96:23-25 ["My attorneys are, unfortunately, not that well versed in probiotics"].)

[4] Attorney Marron attached the original *Burton* Complaint to his Declaration, but neglected to attach the First Amended Complaint ("FAC")—the operative pleading.  (*See* Ex. 1 to Marshack Decl. [Burton FAC].)

DEFENDANT RECKITT BENCKISER LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

claim of an allegedly low germination rate.  (*Id.* at ¶¶ 56, 62, 68, 73.)  The parties

settled the *Burton* Action on a classwide basis, receiving court approval.

(Marshack Decl., ¶ 4.)  Significantly, the *Burton* settlement provided:

> Plaintiff and Class Counsel agree that **it is acceptable** for the advertising of the products and any product manufactured or sold by Defendants containing Ganeden BC30 **to contain the claim that the product *supports digestive and immune health,*** so long as it does not contain the language discussed in Paragraph 4(A) above.

(Ex. 2 to Marshack Decl. at § 4(F) [emphasis added].)[5]

To obtain final approval of the *Burton* settlement, and secure the $292,744.98

in attorneys' fees and $3,300.21 in costs he sought,[6] Attorney Marron made several

representations to the *Burton* court regarding how the injunctive relief he had

obtained "**halted**" deceptive advertising for the products, and "ensured" that the

defendants would "not make false or misleading statements regarding the Products'

alleged health benefits."  (*See* Marshack Decl., ¶¶ 4-9; Ex. 3 [Motion for Final

Judgment] at 18:8-10 [the settlement "ensur[es] that Defendants will not make false

or misleading statements regarding the Products' alleged health benefits"], 18:10-

12 [the settlement "requir[es] Defendants to truthfully state the characteristics of

their products"]; Ex. 4 [Motion for Approval of Attorneys' Fees] at 5:14-16 [the

settlement "halt[ed] deceptive advertising" for the Products], 11:27-12:2 [the

advertising revisions "will heighten consumer awareness and reduce public

deception regarding the Products' actual characteristics and benefits"].)

Attorney Marron also declared under penalty of perjury that the advertising

revisions "directly achieve[d] the result sought in this action, by helping consumers

---

[5] In Paragraph 4(A), the *Burton* defendants agreed not to make advertising claims that the Products (or any of their ingredients) (1) "boost the immune system"; (2) are "clinically proven" to have any certain effects or health benefits; or (3) "restore healthy bacteria following the use of antibiotics," and in Paragraph (4)(B), agreed to modify certain advertising claims.  (Ex. 2 to Marshack Decl. at §§ 4(A)-(B).)

[6] Attorney Marron was awarded these full amounts.  (Marshack Decl., ¶ 10.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

5

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

to be **fully** informed about the Products' true nature and characteristics." (Ex. 5 to Marshack Decl. at ¶ 19 [emphasis added].)  Attorney Marron now claims the advertising revisions that he approved are now somehow false and misleading.

### 5.    BC[30] and the Study on Which Plaintiff Bases Her Claims

BC[30] cells form a protective layer—a spore—that helps the cells survive stomach acid and reach the intestines (*i.e.* "survivability"). (Keller Decl., ¶ 6.) BC[30] has not been genetically modified in over a decade of testing. (*Id.*)

Over the years, the survivability of BC[30] has been repeatedly tested against the probiotic strains in dozens of other supplement brands and yogurts.  The testing has shown that BC[30] survives in significantly higher percentages than the probiotic strains in most other products (well in excess of the 100x claimed). (Keller Decl., ¶ 9.)  Supported by these studies, in July 2015, RB changed its claim from having "10x better survivability" than other leading probiotics to "100x better survivability." (Declaration of Carol Cresong ["Cresong Decl."] at ¶ 10.)

More than 28 studies have been published demonstrating that BC[30] provides a variety of health benefits, both with and without germination in the intestines. Even the study Plaintiff relies on found that BC[30] can confer digestive health benefits *even where there is a low rate of germination.*  Other studies of BC[30] have shown that even when the BC[30] spores are in an inactive state (dormant or even dead), the spores still provide health benefits, including supporting a healthy immune system. (Keller Decl., ¶¶ 11-17; Exs. 1-4.)

Plaintiff bases her claims in this action on a single study[7] ("the 2010 Lactose Study"). (*See* ECF No. 44-6 [Ex. 4 to Marron Decl.]).)  The 2010 Lactose Study states that "[t]he survival of GanedenBC[30] was high (70%), although germination of

---

[7] The Study Plaintiff relies on is titled "Survival and metabolic activity of the GanedenBC30 strain of *Bacillus coagulan*s in a dynamic *in vitr*o model of the stomach and small intestines."  The *Burton* Action also relied on this Study. (*See* Ex. 1 to Marshack Decl. [*Burton* FAC] at ¶¶ 56, 62, 68, 73.)

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Costa Mesa

6

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1  the spores was minimal (<10%) **under the conditions tested**." (Ex. 5 to Keller
2  Decl. at COCHOIT000001 [emphasis added].)

3        Plaintiff misrepresents the 2010 Lactose Study's findings and significance.
4  The Study was not focused on germination (or growth) of $BC^{30}$ or on the wide range
5  of health benefits that the Products could provide.  Rather, the 2010 Lactose Study
6  focused on a single question: whether $BC^{30}$ would "aid in digestion of lactose and
7  milk protein . . . and fructose." (Keller Decl., ¶ 20; Ex. 5 at COCHOIT000002.)
8  Consequently, the *in vitro* model of the gut used for the Study did not contain all
9  the dozens of nutrients that would commonly be found within the human intestines
10  and used as food by $BC^{30}$ to facilitate germination. (*Id.* at ¶ 21; Ex. 5 at
11  COCHOIT000003.)  The Study model contained only *one* nutrient at a time.
12  (Keller Decl. at ¶ 21.)  The Study noted that, because the human intestines have
13  dozens more nutrients than were contained in the Study model, $BC^{30}$ spores would
14  be expected to germinate in the human intestines in greater numbers than in the
15  Study.[8] (*Id.* at ¶ 22; Ex. 5 at COCHOIT000005.)  Recent testing done on $BC^{30}$ by
16  some of the same authors has confirmed that the survival rate of $BC^{30}$ through the
17  stomach is actually close to █████, with █████ of the cells that were recovered after
18  passage through the small intestines having germinated. (Keller Decl. at ¶ 7.)
19  Plaintiff presents no evidence that the Products fail to provide any digestive or other
20  health benefits, even with the germination numbers in the 2010 Lactose Study.

21      **6.**    **Plaintiff Marilyn Cochoit**

22        Plaintiff was recruited for this action by Attorney Marron after filling out a
23  form online. (Marshack Decl., ¶ 11; Ex. 6 at 176:14-177:10, 177:25-178:22.)[9]

24  _____

25  [8] Significantly, the Study ultimately concluded that even with the relatively low
germination rate in the Study, $BC^{30}$ had the potential to aid in the digestion of
26  lactose and fructose. (*Id.* at ¶ 23; Ex. 5 at COCHOIT000001, COCHOIT000005.)

27  [9] Plaintiff is, or at one point was, also a named plaintiff in at least two other class
actions.  She initially responded "no" when asked at her deposition if she had ever
28  been a plaintiff in a lawsuit other than the current action and two car accident

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

7

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

Plaintiff learned about the benefits of probiotics from unidentified commercials, magazines, and information on the internet, as well as from her mother and a "supplement health nut" friend.  A doctor also recommended daily probiotic consumption to one of Plaintiff's family members.  (Ex. 6 to Marshack Decl. at 78:5-80:10, 80:15-81:17, 92:7-93:7, 98:19-100:19, 109:8-110:4.)

At the time of her first probiotic purchase, Plaintiff had developed a cold "and thought [probiotics] would help [her] immune system."  (Ex. 6 to Marshack Decl. at 100:20-101:7.)  Plaintiff testified that the benefits of probiotics are "not something you can necessarily measure," and conceded that she may have received health benefits from her ingestion of probiotics.  (*Id.* at 101:8-22, 105:1-13.)

Plaintiff purchased Digestive Advantage probiotic Products "at least" three times.  (Ex. 6 to Marshack Decl. at 72:13-76:25, 124:25-125:16.)  Plaintiff first purchased Digestive Advantage (capsules) at a CVS or Rite-Aid pharmacy in 2012 or early 2013, years before the "100x better survivability claim" was made.  (*Id.*)  Her initial purchase of the Product was an "impulse"—Plaintiff does not remember reading any information on the Product packaging or seeing any Product ads before making the purchase.  Plaintiff does not know why she purchased Digestive Advantage rather than other brands.  (*Id.* at 125:17-127:12.)  Plaintiff purchased the Product again in October 2013, online at Amazon.  Plaintiff decided to purchase Digestive Advantage instead of other probiotic products at that time because of the Amazon reviews.  (Ex. 6 to Marshack Decl. at 127:13-132:4, 188:6-14.)

The next purchase of Digestive Advantage that Plaintiff could recall was in February 2016 at Costco (Gummies).  (Ex. 6 to Marshack Decl. at 136:9-13; ECF No. 44-19 [Cochoit Decl.] at ¶ 3, ECF No. 44-20.)  Plaintiff did not plan on purchasing probiotics while at Costco and did not comparison shop for probiotics.

---

lawsuits.  Plaintiff admitted her involvement in the two other class actions only after she was confronted with the complaints.  (Ex. 6 to Marshack Decl. at 23:25-24:25, 43:15-45:19.)

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1   Plaintiff made an impulse probiotic purchase because she liked gummies.  (Ex.6 to

2   Marshack Decl. at 139:20-140:17 ["Q: What made you purchase it on that day? A:

3   Honestly, that the[y] were gummies."]; *see also id.* at 166:21-23 ("Q: Did you like

4   the taste of the gummies?  A: That's why I bought them, I hate to tell you.")[10]

5       Plaintiff conceded that ***she may have received health benefits*** from

6   consuming the Digestive Advantage Products.  Plaintiff testified only that she did

7   not see the "remarkable benefits" that she expected because the probiotics did not

8   completely relieve her gas, even though she admitted she was not following the

9   dosing directions for digestive problems.  (Marshack Decl., ¶ 20; Ex. 6 at 163:15-

10  21, 164:17-166:10, 166:24-168:19; Ex. 8 to Marshack Decl.)

11      **7.    Plaintiff Only Came to the Belief That the Advertising for
             Digestive Advantage Was False and Misleading After Being
12           Solicited by Attorney Marron**

13      Plaintiff admits she reached the conclusion that the advertising she

14  challenges was false and misleading only as a result of communications with her

15  attorneys.  Any knowledge that she has relating to the purported need of probiotics

16  to germinate to allegedly be effective, she learned from her attorneys.  (Ex. 6 to

17  Marshack Decl. at 150:10-1, 161:12-20, 180:21-181:8.)

18      Plaintiff refused to answer any questions about *why* she believed the

19  advertising for the Products was false or misleading, claiming that she could not

20  explain why the advertising was false and misleading without revealing attorney-

21  client communications.  (Ex. 6 to Marshack Decl. at 148:18-150:16, 153:23-154:6,

22  156:21-157:9, 157:14-158:10, 161:12-20, 172:24-173:25, 180:21-181:8.)  In other

23  words, Plaintiff has no independent knowledge that the advertising at issue is false

24  or misleading—she merely parrots her attorneys' phony theory.

25

26  ───────────────────
[10] Plaintiff's representation in her declaration that she "would not have purchased
27  the Digestive Advantage product if the label did not say a hundred times better
    survivability" is flatly contradicted by the fact that she purchased the Products at
28  least twice before that claim was made.  (*See* ECF No. 44-19 at ¶ 10.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

9           DEFENDANT RECKITT BENCKISER LLC'S
            OPPOSITION TO PLAINTIFF'S MOTION
            FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**I.**

**PLAINTIFF HAS FAILED TO MEET HER BURDEN TO ESTABLISH THE PROPRIETY OF CLASS CERTIFICATION**

A plaintiff seeking to certify a class bears the burden of establishing the propriety of class certification. *Zinser v. Accufix Research Ctr., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). The plaintiff's burden includes establishing that the requirements of Federal Rule of Civil Procedure 23(a) "are *in fact*" met, and "satisfy[ing] through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013). The court must conduct a "rigorous analysis" to determine whether the plaintiff has met her burden. *Dukes,* 564 U.S. at 350-51. This analysis will "frequently entail overlap with the merits of plaintiff's underlying claim." *Comcast,* 569 U.S. at 33-34 (citing *Dukes,* 564 U.S. at 350).

Plaintiff seeks to certify classes under both Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). (*See* ECF No. 44-1 at 2:4-26.) Because Plaintiff has failed to meet her burden, her Motion must be denied in its entirety.

**A.     Plaintiff's Counsel Has Conflicts With the Class and Is Therefore Inadequate Under Federal Rule of Civil Procedure 23(a)**[11]

Rule 23(a) requires that absent class members will be adequately represented. Fed. R. Civ. Proc. 23(a)(4). Legal adequacy requires, among other things, that the named plaintiffs and their counsel do not have any conflicts of interest with other class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

---

[11] RB does not dispute that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. Proc. 23(a)(1). Although RB disputes that common issues predominate, given the relaxed standard of the commonality requirement of Federal Rule of Civil Procedure 23(a)(2), RB will not contest commonality funder 23(a)(2). However, RB will address the many individual issues raised by Plaintiff's claims with respect to the lack of predominance required under Rule 23(b)(3). *See Mazza v. Am. Honda Motor Co. Inc.,* 666 F.3d 581, 589 (9th Cir. 2012).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

10

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1   Here, putative class counsel has conflicts with the class and therefore cannot satisfy

2   the adequacy requirement of Rule 23(a).

3       A conflict of interest between putative class counsel and the class exists when

4   the attorney's own interests are "hostile, opposed, antagonistic, detrimental, or

5   unfavorable" to the interests of the class. *See Moreno v. Autozone, Inc.,* 2007 WL

6   4287517, *4 (N.D. Cal. Dec. 6, 2007).  There is no question that Attorney Marron's

7   interests conflict with those of the class he purports to represent as a result of his

8   prior express sworn approval of the advertising that he now challenges.

9       Specifically, in this action, Attorney Marron now contends that the

10  advertising claim that the Products "provide digestive health benefits" is false and

11  misleading.  (*See* ECF 44-1 at [Motion] at 1:4-9.)  Yet as part of the *Burton*

12  settlement, Attorney Marron, as Class Counsel, expressly "agree[d] that **it is**

13  **acceptable** for the advertising of the products and any product manufactured or

14  sold by Defendants containing Ganeden BC30 **to contain the claim that the**

15  **product** *supports digestive and immune health*."  (Ex. 2 to Marshack Decl. at §

16  4(F) [emphasis added].)

17      Despite alleging in the *Burton* FAC that BC$^{30}$ did not germinate in sufficient

18  numbers to provide any benefits (*see* Ex. 1 to Marshack Decl. at ¶¶ 23, 52, 62-63,

19  73), as part of the *Burton* settlement, Attorney Marron did not require any statement

20  be included in the Products' advertising relating to an alleged lack of germination.

21  (Marshack Decl., ¶ 4.)  Nor did Attorney Marron require that the advertising claims

22  relating to the survivability of BC$^{30}$ be modified.  (*Id.*)  Further, Attorney Marron

23  *expressly approved* as part of the settlement advertising claims providing that BC$^{30}$

24  "multiplies and acts in the GI biome."  (Ex. 2 to Marshack Decl. at § 4(B).)

25  Nevertheless, Attorney Marron now claims lack of any disclosure about

26  germination is a material omission.

27      *If* the claims about false and misleading advertising in Plaintiff's Complaint

28  are true, Attorney Marron, who approved the advertising, should be judicially

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

11

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

estopped from bringing this action.  *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794-97 (7th Cir. 2013) (holding that the plaintiff was judicially estopped from asserting claims that were inconsistent with the position taken by a third party in an earlier related proceeding, because the third party "was instrumental in orchestrating" both proceedings and, if plaintiff were to prevail, "there would be a clear impression that one court was misled").  Attorney Marron will be a necessary witness in this action as a result of his prior approval of the Products' advertising.  *See Comden v. Superior Court,* 20 Cal. 3d 906, 912 (1978) ("An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate").

Attorney Marron could not have truly "achieve[d] the result sought in [the *Burton*] action, by helping consumers to be fully informed about the Products' true nature and characteristics," and then filed a new lawsuit claiming the advertising that he expressly approved is now false and misleading.[12]  At best, Attorney Marron failed in his duties as Class Counsel in the *Burton* Action.  At worst, he made intentional misrepresentations to the *Burton* court.  Either way, he has a conflict with the class and cannot be considered adequate.

**B.    Plaintiff Has Failed to Establish That the Requirements of Federal Rule of Civil Procedure 23(b)(2) Are Met**

**1.    Plaintiff Lacks Standing to Obtain Injunctive Relief.**

Under Rule 23(b)(2), a court must first determine whether the plaintiff has

---

[12] The fact that a single advertising claim has changed between the time of the *Burton* settlement to the present—from "10x better survivability" to "100x better survivability"—does not ameliorate Attorney Marron's conflicts.  The active ingredient in the Products—$BC^{30}$—has not changed between the two lawsuits. (Keller Decl., ¶ 6.)  Both lawsuits allege that the survivability comparison claim (whether it is 10x or 100x) is false and misleading for the exact same reason: because the probiotic, $BC^{30}$, does not multiply or germinate in the gut in sufficient numbers to confer any benefit, even if it technically "survives."  (*Compare* ECF No. 1 at ¶¶ 4-5, 8-13, 26-32, 37-39, 41-46, 48-63 *with* Ex. 1 to Marshack Decl. at ¶¶ 6-9, 23, 27, 34-35, 38, 54-59, 62-68, 70-73.)

standing to obtain injunctive relief. *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015). A plaintiff lacks such standing if she has not expressed an intention to purchase the products in the future. *Luman v. Theismann,* 647 Fed. Appx. 804, 807 (9th Cir. 2016). *See also In re ConAgra,* 90 F. Supp. 3d at 977*; (denying Rule 23(b)(2) class); Cabral v. Supple, LLC*, 2016 WL 6693155, *2 (C.D. Cal. Jan. 7, 2016) (same); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, *12-14 (N.D. Cal. June 13, 2014) (same, collecting cases). If the plaintiff is not entitled to injunctive relief, she may not represent a class seeking that remedy. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Here, Plaintiff has not expressed any intention to purchase any Digestive Advantage Products in the future.[13] Thus, Plaintiff cannot establish that she has standing to seek injunctive relief, and may not seek such relief on behalf of a class. *See In re ConAgra Foods,* 90 F. Supp. 3d at 977; *Cabral*, 2016 WL 669315 at *2; *Jones*, 2014 WL 2702726 at*12-14; *Hodgers-Durgin*, 199 F.3d at 1045. Consequently, an injunctive relief class cannot be certified under Rule 23(b)(2).

### 2.   The "Restitution" Plaintiff Seeks Is Not "Incidental" to the Equitable Relief She Seeks, and Therefore Should Be Expressly Excluded From Any 23(b)(2) Class.

Even if the Court were to certify an injunctive relief class under Rule 23(b)(2), the Court should make clear that such certification does ***not*** include any claim for monetary relief, because the monetary relief that Plaintiff seeks is not "merely incidental" to her claim for an injunction. *Zinser*, 253 F.3d at 1195 ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive. . . . A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is 'merely incidental to [the] primary claim for injunctive relief.'") (internal citations omitted).[14] Claims for monetary

---

[13] Any attempt to salvage Plaintiff's standing would be disingenuous, given her testimony that the Products are "useless." (Ex. 6 to Marshack Decl. at 209:3-10.)

[14] "Incidental" claims for monetary relief might include claims for statutory

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

13

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

relief are not "merely incidental" to injunctive relief, and thus inappropriate under Rule 23(b)(2), "when each class member would be entitled to an individualized award of monetary damages." *Dukes,* 564 U.S. at 360.  It is error to allow monetary relief as part of a Rule 23(b)(2) class if such relief could not be granted without "individualized determinations of each [person's] entitlement to monetary damages." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 987 (9th Cir. 2011).

Here, each class member's entitlement to monetary damages requires individual determinations, including (1) whether a member is entitled to damages *at all* because, for example, he or she purchased the Products for a reason *other than* for benefits that require germination (*i.e.* immunity benefits); and (2) the amount of each class member's damages.  Accordingly, including monetary relief (*i.e.,* restitution and/or disgorgement) as part of a Rule 23(b)(2) class would be improper. *See Ellis,* 657 F.3d at 987; *Ries,* 287 F.R.D. at 542.

## C.   The Requirements of Federal Rule of Civil Procedure 23(b)(3) Are Not Met Because Individual Issues Predominate Each of Plaintiffs' Claims.

The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  A court must take "a close look" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 615, 623.  Where there are a "greater number of questions peculiar to" class members than common questions, and where the uncommon questions are "significant," the predominance requirement cannot be satisfied. *Id.* at 624.  For the reasons below, the predominance requirement of Rule 23(b)(3) is not met on any of Plaintiff's claims or damages.

damages or punitive damages "that do not turn on the individual circumstances of class members." *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 541 (N.D. Cal. 2012) (denying Rule 23(b)(2) class to the extent plaintiffs sought monetary damages thereunder, including restitution, refund, reimbursement, and disgorgement).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

14

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1  **1.**  **Individual Issues Predominate Regarding Whether a Putative**
**Class Member Is Entitled to Recover on Any of Plaintiff's Claims.**

  As Plaintiff recognizes, the predominance inquiry begins with the elements of Plaintiff's underlying causes of action.  (ECF 44-1 at 13:17-18.)  Each of Plaintiff's causes of action requires that members of the putative class (1) suffered damages (2) *as a result of* conduct by RB.  *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (fraud by omission requires that a plaintiff was damaged as a result of the concealment of the material fact); *Sevidal v. Target Corp.,* 189 Cal. App. 4th 905, 929 (2010) ("it is well settled that to obtain relief under the CLRA, both the named plaintiff and unnamed class members must have suffered some kind of damage caused by a practice deemed unlawful under [the CLRA]") (internal quotation marks and citation omitted); *Hall v. Time Inc.,* 158 Cal. App. 4th 847, 849 (2008) (holding that the UCL "imposes a causation requirement"); *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322-26 (2011) (noting that the standing requirements for the UCL and FAL are the same).

  "[T]he court's task at certification is to ensure that the class is not 'defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'"  *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1138 (9th Cir. 2016) (internal citation omitted).  Where the proposed class may include a significant number of members that have not been aggrieved by the allegedly offending conduct, and therefore, each class member's right to recover depends on facts peculiar to his or her case, a class cannot be certified.  *See, e.g., Turcios v. Carma Labs., Inc.,* 296 F.R.D. 638, 645 (C.D. Cal. 2014) (denying class certification where proposed class included individuals who had not been damaged by defendant's conduct); *Mazur v. eBay, Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009) (same); *Diermenjian v. Deutsche Bank, A.G.,* 2010 WL 11505699, *6 (C.D. Cal. May 13, 2010) (denying class certification, saying, "[w]here a class definition includes both those that have been

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

15

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1  harmed and those that have not, it is impermissibly overbroad and imprecise").[15]

2      Plaintiff's UCL, FAL, and CLRA claims are based on the premise that the

3  Products' advertising claims that they "provide digestive health benefits" and have

4  "100x better survivability" are false and misleading "because the BC[30] spores fail to

5  germinate in the human stomach and therefore cannot provide the advertised

6  *digestive* health benefits." (ECF No. 44-1 [Motion] at 1:4-9, 4:4-8 [emphasis

7  added].)  Plaintiff's omission claim is based on RB's alleged failure to advise

8  consumers that BC[30] does not "settle, colonize, or germinate in the human stomach

9  or intestines and thus do[es] not provide a '*Digestive* Advantage.'"  (ECF No. 44-1

10  at 4:14-17 [emphasis added].)  Plaintiff's proposed classes include *all* purchasers.

11      Plaintiff's theories fail to account for the large percentage of consumers

12  (including Plaintiff) who use probiotics for benefits *other than* those relating to

13  digestion, including benefits that are not dependent upon germination, like

14  supporting immune health.  (*See* Ex. 1 to DeStefano Decl. at RB000667 [█████ of

15  consumers take probiotics to build immunity]; Keller Decl., ¶¶ 11-17 and Exs. 1-4

16  thereto; Ex. 6 to Marshack Decl. at 100:20-101:7.)  These individuals could not

17  have been harmed by the alleged misrepresentations and omissions relating to

18  digestive benefits of the Products or the lack of germination.  At most, the only

19  class members purportedly harmed under Plaintiff's theory would be those who

20  purchased the Products for the *sole* purpose of receiving *digestive* health benefits.

21  Perhaps there are some consumers who purchased the Products *solely* for this

22  reason, but it will require individual inquiries to find them.[16]

---

[15] The discussion of an overbroad class sometimes arises in a court's analysis of whether the class definition is "ascertainable."  Because ascertainability requires only "objective criteria," the discussion of whether or not individual class members have been damaged is more appropriate in the 23(b)(3) inquiry.  *See Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1124, n. 4 (9th Cir. 2017).

[16] Even Plaintiff purchased probiotics for *multiple* "health benefits," including "better immune system, more consistent bowels, [and] better intestinal bacteria." (Ex. 6 to Marshack Decl. at 77:4-25.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA                                16                  DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1    Because determining who is and is not entitled to relief under Plaintiff's

2    theory would require individual inquiries, predominance is lacking.

3         **2.    Individual Issues Predominate in Plaintiff's Fraud Claim.**

4         To prevail on a claim for fraud by omission, Plaintiff must establish, among

5    other things, that (1) RB concealed a material fact; and (2) consumers would not

6    have purchased the Product(s) if they had known of the concealed fact (*i.e.*

7    reliance). *Boschma*, 198 Cal. App. 4th at 248. Plaintiff has failed to demonstrate

8    that either of these issues can be determined on a classwide basis.

9              a.    Individual Issues Predominate the Issue of Materiality

10        As Plaintiff acknowledges, demonstrating a common omission is not enough

11   to meet her burden under 23(b)(3). Plaintiff needs to demonstrate "that the omitted

12   information was material" for a class to be certified for her fraud by omission

13   claim. (*See* ECF No. 44-1 at 16:11-12.)[17] "If the misrepresentation or omission is

14   not material as to all class members, the issue of reliance 'would vary from

15   consumer to consumer' and the class should not be certified." *Stearns v.*

16   *Ticketmaster Corp.,* 655 F.3d 1013, 1022 (9th Cir. 2011) abrogated on other

17   grounds by *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013). An omission is

18   material if "a reasonable man would attach importance to its existence or

19   nonexistence in determining his choice of action in the transaction in question." *In*

20   *re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009).

21        Plaintiff has made no attempt to demonstrate that the omitted information—

22

23   _____

24   [17] Plaintiff states that materiality has an "objective test," relying on cases that do not
     analyze whether or not a representation was material. (*See* ECF No. 44-1 at 15:4-
25   23.) Where, as here, a plaintiff has failed to demonstrate a common understanding
     of advertising or a common reason for purchasing the product, the issue of
26   materiality is "nonetheless subject to individual proof." *Fairbanks v. Farmers New*
     *World Life Ins. Co.,* 197 Cal. App. 4th 544, 565 (2011) (finding that materiality
27   could not be determined on a classwide basis because there were different reasons
     class members may have purchased the product at issue).
28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

17         DEFENDANT RECKITT BENCKISER LLC'S
           OPPOSITION TO PLAINTIFF'S MOTION
           FOR CLASS CERTIFICATION

that BC$^{30}$ allegedly does "not settle, colonize, or germinate in the human stomach or intestines"—would be material to *any* class member, let alone that materiality can be determined on a classwide basis.  Plaintiff cannot even demonstrate that the alleged omission was material to her.  Plaintiff purchased the Products at least twice in 2012 and 2013 and failed to establish that she relied on *any* advertising when purchasing the Products.  Rather, Plaintiff admittedly relied on Amazon reviews when making her purchase.  (*See* Ex. 6 to Marshack Decl. at 125:17-132:4, 188:6-14.)  The fact that she purchased the Products multiple times without relying on advertising for the Products "seriously calls in doubt" whether the information allegedly omitted was material to *any* of her purchases.  *Thompson v. Auto. Club of S. California,* 217 Cal. App. 4th 719, 733 (2013) (plaintiff's earlier transactions called into doubt the materiality of the alleged misrepresentations).  Plaintiff bought the Product in 2016 as an impulse purchase because it was in the form of gummies; she did not have the intention of purchasing probiotics that day and was not comparison shopping between different brands.  (*See* Ex. 6 to Marshack Decl. at 139:20-144:5, 166:21-23.)  This again calls into doubt whether she would not have purchased the Product if the omitted information had been disclosed.  Nor can Plaintiff credibly say that she would have done anything different if there had been information relating to germination on the Product packaging or advertising, because she only subsequently learned about germination from her attorneys and is merely adopting their legal theory.  (*Id*. at 150:10-16.)

With respect to other putative class members, Plaintiff has not demonstrated that anyone would attach importance to whether BC$^{30}$ survives, colonizes, or germinates.  Plaintiff has not established that BC$^{30}$ in fact needs to do any of those things to provide benefits (and it does not), or that consumers would know one way or another how BC$^{30}$ works or should work, such that the omitted information would be important (rather than create greater confusion).  The Gallup Survey shows ███████████.  (Ex. 1 to DeStefano Decl. at RB000640, RB000661-664,

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1    RB000669-670.) If, as shown by the Gallup Survey, most consumers ███

2    ████████████████████████████████████████████████████████, then

3    disclosures relating to technical details like settling, colonizing, or germinating in

4    the intestines are not likely to be important to them.

5       In addition, and as discussed above in Section B.5., germination of BC[30] is

6    not required for the Products to provide certain benefits, such as immune health

7    benefits. (Keller Decl., ¶¶ 11-17; Exs. 1-4.) Information relating to germination is

8    not likely to be material to consumers who purchased the Products for such

9    benefits. Because individual issues relating to the materiality of the alleged

10   omissions will predominate, class certification is not appropriate.

11       b.    <u>Individual Issues Predominate Regarding Reliance</u>

12       Reliance is "an essential element of fraud." *Mirkin v. Wasserman,* 5 Cal. 4th

13   1082, 1110-1111 (1993). Reliance is proven by showing that the alleged

14   misrepresentation or omission was "an immediate cause" of the plaintiff's injury.

15   *Id.* To be an "immediate cause" of injury, the plaintiff must show that, if the

16   omitted information had been disclosed, the plaintiff "in all reasonable probability

17   would not have engaged in the injury-producing conduct." *Id.* Although a plaintiff

18   does not have to show that the omission was the *only* cause of the injury, plaintiff

19   must show the omission "played a substantial part" in influencing her decision.

20   *Engalla v. Permanente Med. Group,* 15 Cal. 4th 951, 976-77 (1997). A

21   presumption, or at least an inference, of reliance arises *only* if there is a showing

22   that a misrepresentation or omission is material. *Id.*

23       For the same reasons Plaintiff cannot demonstrate the materiality of omitted

24   information on a classwide basis, she cannot meet this requirement with respect to

25   reliance. In addition, consumers purchase probiotics—and particular brands of

26   probiotics—for a wide variety of reasons that have nothing to do with any particular

27   advertising. These reasons include █████████████████████████

28   ████████████████████████████████████████████████████

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

19

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1   ████████████████████████████████████████████. (Ex. 1 to DeStefano

2   Decl. at RB000690, RB000704.)  Reviews by other consumers on websites are also

3   likely to influence the ██████ of probiotic consumers who purchase the

4   supplements online, like they influenced Plaintiff.  (*Id*. at RB000641, RB000643,

5   RB000703.)  Because individual issues predominate regarding the issue of reliance,

6   a class should not be certified.

7   
8   **3.      Individual Issues Predominate in Plaintiff's Claims for Violations
            of the UCL, FAL, and CLRA.**

9   
10          a.      <u>Plaintiff Lacks Standing to Assert Her Claims Because She Did
                    Not Rely on the Allegedly Misleading Advertising</u>.

11          Plaintiff's Motion concedes that her claims under the UCL, FAL, and CLRA

12  are based on allegedly "fraudulent" conduct, rather than conduct that is "unlawful"

13  or "unfair."  *See* ECF 44-1 at 13:21-24.  As a threshold matter, to establish statutory

14  standing to seek classwide relief for fraud-based UCL, CLRA, and FAL claims,

15  Plaintiff must demonstrate that she "actually relied" on RB's allegedly deceptive or

16  misleading statements.  *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728 (9th

17  Cir. 2012) (*citing In re Tobacco II Cases*, 46 Cal. 4th at 306); *Stearns*, 655 F.3d at

18  1022 (*quoting In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (holding

19  that to bring a CLRA claim, a plaintiff must "show not only that a defendant's

20  conduct was deceptive but that the deception caused [him] harm.")  The reliance

21  requirement is the same as described above relating to Plaintiff's fraud by omission

22  claim.  *In re Tobacco II Cases*, 46 Cal. 4th at 326.

23          For the same reasons discussed above in Section I.C.2., Plaintiff cannot

24  demonstrate that she relied on the alleged misrepresentations.  In addition, Plaintiff

25  has not established that she purchased the Products solely for the purpose of

26  digestive health.  Plaintiff purchased probiotics the first time for their immune

27  benefits, which does not require germination.  (Ex. 6 to Marshack Decl. at 100:20-

28  101:7.)  Because Plaintiff lacks standing to bring her UCL, FAL, and CLRA

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

20                      DEFENDANT RECKITT BENCKISER LLC'S
                        OPPOSITION TO PLAINTIFF'S MOTION
                        FOR CLASS CERTIFICATION

1    claims, a class cannot be certified on any of these causes of action.

2              b.    Individual Issues Predominate Regarding Whether Members of
3                    the Public Were Likely to Be Deceived.

4         To state a claim under the UCL and FAL based on false advertising, Plaintiff

5    must "show that members of the public are likely to be deceived" by RB's conduct.

6    *In re Tobacco II Cases*, 46 Cal. 4th at 312; *see Block v. eBay, Inc.,* 747 F.3d 1135,

7    1140 (9th Cir. 2014) (noting that the FAL uses the same standard as the UCL).  A

8    misrepresentation is "likely to deceive" if "it is probable that a significant portion of

9    the general consuming public or of targeted consumers, acting reasonably in the

10   circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App.

11   4th 496, 508 (2003).  Plaintiff alleges that the advertising claims saying that the

12   Products "provide digestive health benefits" and have "'100x better survivability"

13   are false and misleading because the $BC^{30}$ spores fail to germinate in the human

14   stomach [sic] and therefore cannot provide the advertised digestive health benefits."

15   (ECF No. 44-1 [Motion] at 1:4-9, 4:4-8.)  Plaintiff has not demonstrated that the

16   likelihood of deception can be determined classwide.

17        Plaintiff has failed to establish that there is a uniform understanding of the

18   meaning of the "100x better survivability" claim, how probiotics or $BC^{30}$ work, or

19   whether germination is required to provide digestive or other health benefits.  *See*

20   *Jones,* 2014 WL 2702726 at*14 (finding predominance lacking for UCL and FAL

21   claims where plaintiff did not demonstrate a common understanding of the

22   allegedly misleading phrase).  Different probiotic strains can have different effects,

23   and the Gallup Survey suggests that █████████████████████████████

24   ████████████████████████████████████████████████████████████.

25   (Merenstein Decl., ¶ 14; Ex. 1 to DeStefano Decl. at RB000640, RB000661-664,

26   RB000669-670.)  Because Plaintiff has failed to demonstrate a "cohesion among

27   the class members," certification is inappropriate.  *Jones,* 2014 WL 2702726 at *14.

28        Even if Plaintiff could demonstrate a common understanding of the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

21

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

advertising claims, to prevail in her argument that the advertising claims are likely to deceive a reasonable consumer, the Court would have to accept Plaintiff's theory as true—that germination of the spores in the intestines is required for the Products to provide any benefits. But the Court cannot do that. *See Comcast,* 569 U.S. at 33-34 (a court must consider the merits of plaintiff's claims when they overlap with class certification considerations). As discussed, $BC^{30}$ spores can provide benefits, such as immune benefits, even when they do not germinate. (Keller Decl., ¶¶ 11-17; Exs. 1-4.) Thus, consumers who purchased the Products for health benefits not requiring germination of the spores (such as the ███ of consumers who take probiotics to build immunity) were not misled by the challenged advertising.

Because there are members of the class who are not likely to be deceived by the challenged advertising, Plaintiff has failed to establish that this requirement can be demonstrated by classwide proof, and individual issues predominate.

> c.   Individual Issues Predominate the Issues of Reliance and Materiality as Required by the CLRA.

Under the CLRA, *each class member* has to have actually relied on the unlawful practice. *Stearns,* 655 F.3d 1022. Classwide reliance cannot be presumed unless the plaintiff demonstrates that the alleged misrepresentations were *material* to all class members. *Id.* at 1022-23. The standard for materiality is the same as discussed above in Section I.C.2.a. with respect to fraud. Although materiality under the CLRA is an objective standard, the Plaintiff still "need[s] to point to some type of common proof." *Jones,* 2014 WL 2702726 at* 16 (materiality could not be determined on a classwide basis where there were numerous reasons consumers might buy the products at issue, and plaintiff did not provide evidence demonstrating the impact of the challenged label statements); *Badella v. Deniro Mktg. LLC,* 2011 WL 5358400,* 9 (N.D. Cal. Nov. 4, 2011) (materiality could not be determined on a classwide basis because the plaintiff failed to indicate how he would demonstrate materiality to other class members); *Fairbanks,* 197 Cal. App.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

22

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

4th at 565 (materiality could not be determined classwide where there was no common understanding of advertising and no single reason for product purchase).

For the reasons already discussed in Section I.C.2.a., Plaintiff cannot establish materiality of the alleged misrepresentations on a classwide basis.  In addition, sales of the Products remained flat after the "100x better survivability" claim was introduced to the market, which suggests that it was not material to many consumers.  (Cresong Decl., ¶¶ 10-12.)  Because individual inquiries predominate the questions of reliance and materiality, a class should not be certified.

### 4.  Plaintiff Has Failed to Establish That Damages Can Be Measured on a Classwide Basis.

To certify a class under Federal Rule of Civil Procedure 23(b)(3), a plaintiff must demonstrate that monetary damages attributable to the defendant's conduct "are capable of measurement on a classwide basis."  The damages model presented by a plaintiff must be consistent with its liability case.  *Comcast,* 569 U.S. at 34-35.

The proper measure of restitution in claims under the UCL, FAL, and CLRA is the difference between what the plaintiff paid and the value of what was received. *In re Vioxx,* 180 Cal. App. 4th at 139.[18]  Here, Plaintiff offers a damages model assigning **zero** value to the Products, claiming the Products are "worthless." Plaintiff seeks recovery of the entire purchase price for the Products, or disgorgement of RB's profits from the Products.  (*See* ECF No. 44-1 at 17-19.)

This "full restitution" (or "full refund") model has been rejected by courts when the product at issue may have some value to a consumer even if the advertising is false and misleading as alleged.  *See, e.g., In re POM Wonderful LLC,* 2014 WL 1225184, *3 (C.D. Cal. March 25, 2014) (denying class certification because plaintiff failed to present a viable damages model, and rejecting the "full refund" theory because plaintiffs could not plausibly contend

---

[18] This measure of damages should also apply to Plaintiff's fraud cause of action.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

23

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

they received no benefit from the defendant's juice products, and the model did not account for benefits they received); *Lanovaz v. Twinings N. Am., Inc.,* 2014 WL 1652338, *6 (N.D. Cal. April 24, 2014) (same, with respect to defendant's tea).

Plaintiff cannot plausibly claim that the class failed to receive any benefit from the Products.  Plaintiff's theory is that the Products did not provide any *digestive* benefits, but consumers take probiotics for reasons *other than* digestive benefits, like immune health (as Plaintiff did the first time), which does not require germination.  Further, the "Daily Probiotics" at issue contain calcium in addition to BC[30].  (*See* Marshack Decl., ¶ 21; Ex. 9; Cresong Decl., ¶ 14.)  The gummies are like "candy," which Plaintiff liked, and which was in fact the reason Plaintiff bought the Product in 2016.  (Ex. 6 to Marshack Decl. at 140:12-17, 209:8-10.)  Plaintiff's damages model fails to account for the fact that even if the advertising at issue was false and misleading, the Products were not worthless to everyone (including Plaintiff who enjoyed the taste).  Plaintiff's damages model is therefore inadequate.[19]  *See Allen v. Similasan Corp.,* 306 F.R.D. 635, 649 (S.D. Cal. 2015) (refusing to certify a class as to certain advertising claims because the products may have some value even if those advertising claims were untrue).

In addition, Plaintiff's own marketing "expert," George Belch, admits that the Products' "100x better survivability" claim was a "superiority" claim, "intended to communicate superior efficacy over yogurt and other probiotic products."  (*See* ECF 44-22 [Belch Decl.] at ¶¶ 9, 15, 17, 21, 27, 28.)  However, Plaintiff's damages model makes no effort to calculate any sort of "premium" attributable to any claims that the Products are superior to other probiotics.  *See In re NJOY, Inc. Consumer*

---

[19] Because the Products have value independent of their effects on digestive health and are not "worthless," this case is unlike the cases Plaintiff relies on, dealing with homeopathic medicinal products.  *See* ECF 44-1 at 18:4-16 *citing Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671, n. 25 (C.D. Cal. 2014) (distinguishing the remedies from products, like food, which "have some inherent nutritional value" and are thus "not worthless").

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

24                        DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1  *Class Action Litig.,* 120 F. Supp. 3d 1050, 1118 (C.D. Cal. 2015) (plaintiff's

2  damages model was insufficient because it failed to present a methodology to

3  determine "the price premium attributable to" the allegedly deceptive practices).

4       Because Plaintiff's damages model fails to meet the requirements of

5  *Comcast,* class certification must be denied.

6  **D.**    **Plaintiff Is Not Typical of the Class She Purports to Represent.**

7       Where proof of a named plaintiff's claims does not resolve the class claims,

8  typicality under Rule 23(a)(2) is lacking. *See Gen. Tel. Co. of Sw. v. Falcon*, 457

9  U.S. 147, 159 (1982).  Similarly, class certification is not appropriate if the

10  representative is subject to unique defenses that threaten to become the focus of the

11  litigation to absent class members' detriment. *Hanon v. Dataproducts Corp.,* 976

12  F.2d 497, 508 (9th Cir. 1992) (denying class certification based on lack of typicality

13  where the representative plaintiff was subject to unique defenses).  Plaintiff

14  contends that her claims are typical of the class because she and all class members

15  "were exposed to the same misleading claims and omissions and were injured in the

16  same manner when they purchased Digestive Advantage Products that do not

17  provide the promised digestive health benefits, and thus have no value."  ECF No.

18  44-1 at 10:19-22.  This is the beginning, and not the end, of the typicality inquiry.

19       For the reasons addressed above with respect to (1) Plaintiff's lack of

20  standing, (2) her inability to establish the materiality of the alleged omissions, (3)

21  misrepresentations, or (4) her reliance thereon, she is not typical of the class.

22  **CONCLUSION**

23       For the foregoing reasons, Plaintiff has failed to meet her burden to establish

24  that class certification is proper.  Consequently, RB respectfully requests that the

25  Court deny Plaintiff's Motion in its entirety.[20]

26  _____

27  [20] RB objects to Plaintiff's proposed notice plan set forth in the Retnasaba Declaration (ECF No. 44-24).  Even if the Court grants Plaintiff's Motion, the

28  Court should provide RB with an opportunity to provide input into a notice plan.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

25

DEFENDANT RECKITT BENCKISER LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

1

2   Dated:      March 26, 2018                MANATT, PHELPS & PHILLIPS, LLP
                                              Robert H. Platt
3                                             Adrianne E. Marshack

4

5                                             By:/s/ Adrianne E. Marshack
                                                 Adrianne E. Marshack
6
                                              Attorneys for Defendant
7                                             RECKITT BENCKISER LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

26   DEFENDANT RECKITT BENCKISER LLC'S
     OPPOSITION TO PLAINTIFF'S MOTION
     FOR CLASS CERTIFICATION