UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| MARILYN COCHOIT, on behalf of herself, all others similarly situated, and the general public,<br><br>   Plaintiff,<br>   v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., SCHIFF NUTRITION GROUP, INC., GANEDEN BIOTECH, INC., and RECKITT BENCKISER LLC,<br><br>   Defendants. | Case No.: SACV 16-01371-CJC(KESx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL** |

## I. INTRODUCTION

On July 25, 2016, Plaintiff Marilyn Cochoit brought this putative consumer protection class action against Defendants Schiff Nutrition International, Inc., Schiff Nutrition Group, Inc., Ganeden Biotech, Inc., and Reckitt Benckiser LLC for various causes of action arising out of allegedly false and misleading advertisements about Defendants' "Digestive Advantage" products. (Dkt. 1 [Complaint, hereinafter "Compl."] ¶ 3.) Before the Court is Plaintiff's motion for class certification and to appoint class counsel. (Dkts. 44 [Notice of Motion], 44-1 [Memorandum, hereinafter "Mot."].) Plaintiff seeks to appoint her attorney, Ronald Marron, as class counsel. (Mot. at 12.)

In 2011, Marron was counsel in a related case, *David Burton v. Ganeden Biotech, Inc., et. al.*, Case No. 3:11-cv-01471-W-NLS. There, Marron also represented the plaintiff, David Burton, in a putative consumer class action against many of the same defendants. *Burton* was settled in 2012, and Marron negotiated the settlement agreement. For the following reasons, the Court finds that Marron's involvement in *Burton* raises potential conflicts of interest such that he cannot adequately represent the class here. Plaintiff's motion is therefore DENIED.

## II. BACKGROUND

**A. The *Burton* Lawsuit**

In 2011, David Burton, represented by Marron, filed the *Burton* action in the Southern District of California. (*See* Dkt. 59-1 [*Burton* First Amended Complaint].) The *Burton* action was brought against three defendants, Schiff Nutrition International, Inc., Schiff Nutrition Group, Inc., and Ganeden Biotech, Inc. (*Id.*) *Burton* was a putative class action lawsuit regarding the advertising of the defendants' products. (*Id.* ¶ 4.)

Specifically, Burton took issue with the advertisements of the defendants' "digestive care" supplements that contain the bacteria Ganeden $BC^{30}$, also known as $BC^{30}$. (*Id*.) Burton alleged it was false for the defendants to claim that the supplements are "clinically proven" to provide digestive and immune health benefits. (*Id*. ¶ 20.) For example, it was allegedly false for the defendants to claim that their products "deliver 'over 10 times more live cells than the leading fortified probiotic yogurt.'" (*Id*. ¶ 23.) Burton alleged that these advertisements were not supported by adequate clinical research and were therefore false and misleading. (*See generally id*.) One of the studies the defendants relied on, a "survivability study," studied the survival of $BC^{30}$ in the gastrointestinal tract when consumed. (*Id*. ¶ 56.) Burton alleged that the survivability study was "inconclusive and useless" because it concluded that while the survival of the bacteria was high at 70%, the "germination" of the bacteria was minimal at less than 10%. (*Id*.)

On March 24, 2012, the *Burton* parties entered into a settlement agreement. (Dkt. 59-2.) Marron signed the settlement agreement as counsel for the settlement class members. (*Id*.) In exchange for a settlement of the case, the defendants agreed to pay a fund of $900,000. (*Id*. at 4.) Of that amount, Marron received $292,744.98 in attorneys' fees and $3,300.21 in costs. (Dkt. 65 at 5.) In addition, $3,400 was paid to Burton as an incentive payment. (Dkt. 59-2 at 11.) The remaining amount was allocated to class members, who received either $18 or $2, depending on the specific product they had purchased. (*Id*. at 4–5.)

The defendants also agreed not to use the following statements in their advertising and labeling for a period of two and a half years: (1) that the products "boost the immune system," (2) that the products are "clinically proven" to have certain benefits, and (3) that the products "restore healthy bacteria following the use of antibiotics." (*Id*. at 7–8.) However, Burton and Marron expressly agreed that it is acceptable for the defendants to use other statements that claim $BC^{30}$ "supports digestive and immune health." (*Id*. at 10.)

1  The settlement agreement contained no provision indicating it was false for the
2  defendants to claim that their products survived in the gastrointestinal tract at rates ten
3  times higher than probiotic yogurt.

5    The settlement agreement also contained a "notice and cure" provision.  (*Id*. at 9.)
6  The parties agreed under this provision that, for two and a half years following the
7  effective date of the final judgment, Burton and Marron would notify and give the
8  defendants' counsel thirty days to cure any advertising that they believed breached the
9  settlement agreement.  (*Id*.)  This "notice and cure" option was to be Burton and
10 Marron's exclusive remedy for any allegedly false advertisements during the two and a
11 half year period.  (*Id*.)

13    The *Burton* court approved the settlement agreement on October 4, 2012, and the
14 effective date of the final judgment was November 3, 2012.  (Dkt. 80-1 ¶ 7.)  In
15 connection with Burton's motion seeking approval of the settlement agreement, Marron
16 submitted a declaration.  (Dkt. 59-5.)  In that declaration, Marron represented that the
17 elimination of the statements identified in the settlement agreement "will directly achieve
18 the result sought in this action, by helping consumers to be fully informed about the
19 Products' true nature and characteristics."  (*Id*. ¶ 19.)

21    Because the effective date of the final judgment was November 3, 2012, the two
22 and a half year "notice and cure" period ended on May 3, 2015.  (Dkt. 80-1 ¶ 8.)  During
23 this entire period, Marron did not contact any of the *Burton* defendants or their counsel
24 about any allegedly false advertisements.  (*Id*.)

26 //
27 //
28 //

**B. The Instant Lawsuit**

On April 15, 2016, Marron, on behalf of a client Jennifer Hernandez, sent a demand letter under the Consumers Legal Remedies Act to the same defendants named in *Burton*, along with the defendants' successor company, Recknitt Benckiser, LLC. (Dkt. 80-1 ¶ 9; Dkt. 80-3.) The letter claimed that Defendants' products containing $BC^{30}$, now branded as "Digestive Advantage" products, are advertised using false claims. (Dkt. 80-3 at 2.) The false claims purportedly included statements that the Digestive Advantage products provide "10X Better Survivability vs. Yogurt" and "100X Better Survivability vs. Yogurt and other leading Probiotics." (*Id.*) The letter also indicated that Hernandez had purchased Digestive Advantage products four times between May 2014 and the beginning of 2015. (*Id.*)

On May 18, 2016, Defendants' counsel sent Marron a letter in response to the demand letter. (Dkt. 80-4.) Defendants noted that all of Hernandez's purchases fell within the two and a half year "notice and cure" period provided for in the *Burton* settlement agreement. (*Id.* at 4.) So, Defendants argued, Marron shared responsibility for any alleged false advertisements in this period by failing to bring such advertisements to Defendants' attention. (*Id.*) Defendants contended that Marron's failure to raise the allegedly false advertisements during the "notice and cure" period was a breach of the settlement agreement or a breach of Marron's duties to the *Burton* class. (*Id.* at 5.) Defendants indicated that they intend to argue that Marron shares liability for the alleged false advertisements and to seek disgorgement of the attorneys' fees Marron received under the *Burton* settlement. (*Id.*)

In response to Defendants' letter, Marron abandoned the claims brought on behalf of Jennifer Hernandez, apparently because all of her purchases of Defendants' products fell within the "notice and cure" period. Instead, Marron found an alternative plaintiff,

Marilyn Cochoit, and, on June 22, 2016, sent another demand letter to Defendants on her behalf. (Dkt. 80-5.) This letter again claimed that Defendants' advertisements of the Digestive Advantage products were false. (*Id.*) The letter indicated that Cochoit purchased a Digestive Advantage product on February 2016—after the "notice and cure" period. (*Id.* at 3.) On July 25, 2016, Defendants sent another letter in response to Marron, (Dkt. 80-7), and Plaintiff Cochoit filed the instant lawsuit the same day, (*see* Compl.).

According to the Complaint, Defendants hold Digestive Advantage products out to be "The Probiotic that Survives," and claim that it has "100x Better Survivability vs. Yogurt & leading Probiotics." (*Id.* ¶¶ 37–38, 42–43.) Cochoit alleges these advertisements are false because they cite to "purported '[sic] simulated gastric studies supporting a '100x Better Survivability' claim, but such studies are nowhere described except in vague terms, nor do they exist in the published peer-review scientific literature." (*Id.* ¶ 4.) To explain why Defendants' advertisements are misleading, Cochoit cites the same "survivability study" as Burton, which found that germination of the bacteria is minimal at only 10%. (*Id.* ¶ 45.)

At Cochoit's deposition, she testified that she purchased Defendants' Digestive Advantage products at least three times since 2013, but she does not remember what advertisements she saw relating to those products. (Dkt. 59-6 [Deposition of Marilyn Cochoit, hereinafter "Cochoit Depo."] at 72:13–74:8, 78:17–80:12.) She also testified that she was recruited for this lawsuit sometime in early 2016 by Marron, who contacted her after she filled out a questionnaire online relating to Defendants' products. (*Id.* at 176:14–178:22.)

When Cochoit purchased the Digestive Advantage products, she did not know whether Defendants' claims about "survivability" were false or misleading. (*Id.* at

153:23–154:6, 157:14–158:10.) Later, when Cochoit was recruited by Marron, she learned through conversations with him that the "100x survivability claim" was false. (*Id*.) Cochoit did not conduct any independent research to understand why the claim was false, and she did not talk to anyone else about Defendants' advertisements. (*Id*. at 156:21–159:7.) Cochoit concluded that the advertisements were false solely based on information that she learned from Marron. (*Id*. at 156:21–159:7.)

Cochoit now seeks to certify two classes and appoint Marron as class counsel. (Mot. at 2.) Cochoit seeks to bring a fraud claim on behalf of a "Nationwide Class," defined as follows: All persons in the United States who purchased the Schiff Digestive Advantage Daily Probiotic and the Schiff Digestive Advantage Gummies with the "100x better survivability" claims for personal and household use and not for resale from July 1, 2015 until the date class notice is disseminated. (*Id*.) In addition, Cochoit seeks to bring various California state law claims on behalf of a "California Class," defined as follows: All persons in California who purchased the Schiff Digestive Advantage Daily Probiotic and the Schiff Digestive Advantage Gummies with the "100x better survivability" claims for personal and household use and not for resale from July 1, 2015 until the date class notice is disseminated. (*Id*.)

## III. ANALYSIS

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (abrogated on other grounds). The plaintiff bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23 is not merely a pleading standard—a party seeking

class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982).

To satisfy the adequacy requirement, the named plaintiff must show that she and her counsel will fairly and adequately represent the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This requirement ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members. *Hansberry v. Lee*, 311 U.S. 32, 43 (1940). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The Court finds that Marron's involvement in the *Burton* action raises a potential conflict of interest and compromises Marron's ability to vigorously represent the class. When Marron settled the *Burton* case, he promised to diligently protect the *Burton* class and to give Defendants notice of any allegedly offending advertisements during the "notice and cure" period. In exchange for this promise, he received approximately $300,000 in attorneys' fees, while the class members received payments ranging from $2 to $18. Marron failed to bring any allegedly offending advertisements to Defendants' attention during the "notice and cure" period. Instead, a year after the "notice and cure"

period had ended, Marron sent a demand letter to Defendants on behalf of Jennifer Hernandez, complaining of advertisements that had existed during the "notice and cure" period. When Defendants pointed out to Marron that all of Hernandez's purchases fell within the "notice and cure" period, Marron dropped Hernandez as a plaintiff. He then recruited Marilyn Cochoit, who made one purchase after the "notice and cure" period (although her other two purchases were made within the period), and issued a substantially similar demand letter on Cochoit's behalf. In response to this conduct, Defendants believe that Marron has either breached his duties to the *Burton* class or breached the settlement agreement by failing to avail himself of the "notice and cure" procedure, which purportedly would have remedied the claims of false advertising at issue in this case. Defendants therefore intend to seek a disgorgement of the attorneys' fees Marron received in the *Burton* settlement.

Regardless of whether Defendants are correct that Marron breached his duties to the *Burton* class or breached the terms of the settlement agreement, it is clear that Marron faces a conflict of interest. The core allegation in Cochoit's complaint is that Defendants falsely claim that their products survive in the gastrointestinal tract at rates 100 times higher than probiotic yogurt. It is in Cochoit's and the putative class' interest to argue that all related advertisements, touting the survivability of the products, are false. Yet, if Marron presents such an argument, he will be forced to explain why he allowed a similar advertising scheme—touting ten times better survivability—to continue throughout the *Burton* action and the "notice and cure" period.[1] Further, if Marron admits that he failed to enjoin Defendants from making these advertisements, he risks admitting a breach of the *Burton* settlement and a disgorgement of the fees he received. As a result, there is at least a substantial risk that Marron's personal interest in keeping those attorneys' fees

---

[1] Marron admits that he knew about advertisements claiming Defendants' products had "10x Better Survivability" during the pendency of the *Burton* action. (Dkt. 77-1 ¶ 2.)

will conflict with Cochoit's and the putative class members' interest in setting forth their strongest legal and factual arguments.

The Court also finds that Marron cannot vigorously defend the putative class in this action. "[T]here are no fixed standards by which 'vigor' can be assayed." *Hanlon*, 150 F.3d at 1021. But, due process requires that class counsel be able to fairly and adequately represent the absent class members who will be bound by the judgment. *Hansberry*, 311 U.S. at 43. As evidenced by the instant motion for class certification, Marron's conduct and involvement in both *Burton* and this case are distractions from the merits of Cochoit's claims. All of the substantive motions filed in this case have concerned *Burton* and Marron. In a motion to dismiss filed by Defendants, Defendants argued that *Burton* raised a res judicata bar. (Dkt. 12.) Now, on a motion for class certification, Defendants complain of Marron's adequacy as class counsel. If the putative class and Defendants were to reach a settlement agreement, the Court, in deciding whether to approve the agreement, would be forced to consider whether Marron is receiving duplicative fees. At every turn Marron has been compelled to justify his role in this case, at the expense of the putative class members and their ability to litigate the merits of their claims. This undermines Marron's ability to vigorously represent the absent class members who are entitled to a fair resolution of their claims.[2]

//
//
//
//

---

[2] On May 23, 2018, after Plaintiff filed her instant motion for class certification and to appoint class counsel, another law firm, Cohelan, Khoury, and Singer ("the Cohelan firm"), appeared as counsel for Plaintiff in this case. (Dkt. 71–73.) Plaintiff contends that the Cohelan firm can be appointed as co-class counsel to cure any doubts of adequacy. (Dkt. 77 at 7.) However, Plaintiff has failed to properly move to appoint the Cohelan firm, so the Court denies any request to appoint co-counsel.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has not met her burden of establishing the adequacy requirement and her motion for class certification and to appoint class counsel is DENIED.[3]

DATED: July 9, 2018

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[3] Because Plaintiff fails to meet her burden of showing adequacy, it is unnecessary for the Court to consider the remaining Rule 23 requirements.