MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (SBN 108533)
 E-mail: *RPlatt@manatt.com*
ADRIANNE E. MARSHACK (SBN 253682)
 E-mail: *AMarshack@manatt.com*
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendant
RECKITT BENCKISER LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MARILYN COCHOIT, on behalf of herself, all others similarly situated, and the general public,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., SCHIFF NUTRITION GROUP, INC., GANEDEN BIOTECH, INC., RECKITT BENCKISER LLC,<br><br>　　　　　　Defendants. | No.  8:16-cv-01371-CJC-KES<br><br>Assigned to Judge Cormac J. Carney, Courtroom No. 9B<br><br>**DEFENDANT RECKITT BENCKISER LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed Concurrently with:<br>(1) Statement of Uncontroverted Facts and Conclusions of Law; (2) Marshack Decl.; (3) Keller Decl.; and (4) [Proposed] Order<br><br>Hearing:<br>Date: September 17, 2018<br>Time: 1:30 p.m.<br>Crtrm: 9B<br><br>Complaint filed: July 25, 2016<br>Trial Date: TBD |

1

## TABLE OF CONTENTS

2

**Page**

3    PRELIMINARY STATEMENT ................................................................. 1

4         A.    Introduction ........................................................................... 1

         B.    Summary of Relevant Uncontroverted Facts ........................ 2
5
               1.    Plaintiff Purchased Digestive Advantage Several Times
6                    and Never Had Any Complaints Until She Was Solicited
                     by Her Attorney .................................................................. 2
7
               2.    The Alleged False Advertising for Digestive Advantage ......... 3
8
               3.    Plaintiff's Claims Are Premised Solely on a
9                    Misrepresentation (or Misunderstanding) of a Single
                     Study ......................................................................................... 5
10
               4.    Plaintiff Used Probiotics for a Variety of Health Benefits ....... 7
11
               5.    Plaintiff Concedes That She May Have Received Benefits
                     From the Digestive Advantage Probiotics ............................. 7
12
     I.    SUMMARY JUDGMENT STANDARD ..................................... 9
13
     II.   SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF
14         PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CANNOT
           ESTABLISH THAT RB OMITTED MATERIAL FACTS ..................... 10
15
           A.    Plaintiff Cannot Establish That RB Omitted a Material Fact ............ 10
16
           B.    Plaintiff Cannot Establish That the "100x Better Survivability"
17               Claim Is False or Misleading .................................................. 11

18   III.  ALTERNATIVELY, RB IS ENTITLED TO SUMMARY
           JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS BECAUSE
19         PLAINTIFF CANNOT ESTABLISH THAT SHE WAS DAMAGED
           BY OR RELIED ON ANY ALLEGED OMISSIONS OR FALSE OR
20         MISLEADING STATEMENTS ................................................... 13

21         A.    Each of Plaintiff's Claims Also Fails as a Matter of Law
                 Because Plaintiff Cannot Establish That She Was Damaged ............ 13
22
           B.    Alternatively, Plaintiff's Fraud by Omission Claim Fails
23               Because Plaintiff Cannot Establish That She Would Not Have
                 Purchased Digestive Advantage If the Alleged Omitted
24               Information Had Been Disclosed .............................................. 15

25         C.    Alternatively, Plaintiff's UCL, FAL, and CLRA Claims Fail
                 Because Plaintiff Cannot Establish That She Relied on the
26               Allegedly False Advertising When Purchasing the Products ............ 17

27   IV.   ALTERNATIVELY, PLAINTIFF LACKS STANDING TO PURSUE
           INJUNCTIVE RELIEF ............................................................. 20

28   CONCLUSION ........................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................. 9

*Boschma v. Home Loan Ctr., Inc.*,
198 Cal. App. 4th 230 (2011) ............................................................ 10, 12

*Buckland v. Threshold Enterprises, Ltd.*,
155 Cal. App. 4th 798 (2007) ............................................................ 15, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................. 9

*City of Los Angeles v. Lyons*,
461 U.S. 95 (2003) .................................................................................. 19

*Cohen v. DIRECTV*,
178 Cal. App. 4th 966 (2009) ................................................................. 18

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ................................................................ 11

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ............................................................... 18

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ........................................................... 13, 19

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ...................................................................... 17, 18

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........................................................... 13, 15, 17

*Luman v. Theismann*,
647 Fed. Appx. 804 (9th Cir. 2016) ....................................................... 19

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................. 9

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) ...................................................................... 15, 17

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
210 F.3d 1099 (9th Cir. 2000) .................................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Reed v. NBTY, Inc.*,
   No. EDCV-13-0142 2014 WL 12284044, at *16 (C.D. Cal. Nov.
   18, 2014) ................................................................................................ 12, 15

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) ........................................................................ 13

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) ......................................................................... 9

*Thompson v. Automobile Club of Southern California*,
   217 Cal. App. 4th 719 (2013) ........................................................................ 13

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305 (2009) ...................................................................... 17

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083, 1094-95 (C.D. Cal. 2015) .......................................... 13

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................................... 3, 4, 11

Cal. Bus. & Prof. Code § 17500 ............................................................... 3, 4, 11

Cal. Bus. & Prof. Code § 17204 ....................................................................... 17

Cal. Bus. & Prof. Code § 17535 ....................................................................... 17

Cal. Civ. Code § 1770(a) .................................................................................. 11

Cal. Civ. Code § 1780(a) .................................................................................. 18

Cal. Civ. Code § 1750 ......................................................................................... 3

**RULES**

Fed. R. Civ. P. 56 ........................................................................................... 3, 9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 17, 2018, at 1:30 p.m. in Courtroom 9B of the United States District Court for the Central District of Los Angeles, Southern Division, located at 411 West 4th Street, Santa Ana, California 92701-4516, Defendant Reckitt Benckiser LLC[1] ("RB" or "Defendant") will and hereby does move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment, or in the alternative, partial summary judgment, of the claims asserted in Plaintiff Marilyn Cochoit's ("Plaintiff") Complaint (the "Complaint") on the following grounds:

1.     RB is entitled to judgment as a matter of law on Plaintiff's First Claim for Fraud by Omission because Plaintiff cannot establish that RB concealed a material fact; and/or

2.     RB is entitled to judgment as a matter of law on Plaintiff's Second Claim for Violation of the Unfair Competition Law, California Business & Professions Code § 17200 ("UCL"), Third Claim for Violation of the False Advertising Law, California Business & Professions Code § 17500 ("FAL"), and Fourth Claim for Violation of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA"), because Plaintiff cannot establish that the "100x better survivability" advertising claim is false or misleading; and/or

3.     Alternatively, RB is entitled to judgment as a matter of law on all of Plaintiff's Claims because Plaintiff cannot show that she was damaged as a result of any conduct of RB; and/or

4.     Alternatively, RB is entitled to judgment as a matter of law on Plaintiff's First Claim for Fraud by Omission because the undisputed facts show that Plaintiff did not rely on any alleged omission when she purchased Digestive Advantage, and, therefore, Plaintiff cannot establish an essential element of

---

[1] All other defendants have been dismissed from this matter.  (*See* ECF No. 11.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

1   Plaintiff's Fraud by Omission claim; and/or

2       5.      Alternatively, RB is entitled to judgment as a matter of law on

3   Plaintiff's Second Claim for Violation of the UCL, because the undisputed facts

4   show that Plaintiff did not rely on any allegedly false or misleading advertising by

5   RB when she purchased Digestive Advantage, and therefore Plaintiff lacks standing

6   to pursue her UCL claim; and/or

7       6.      Alternatively, RB is entitled to judgment as a matter of law on

8   Plaintiff's Third Claim for Violation of the FAL, because the undisputed facts show

9   that Plaintiff did not rely on any allegedly false or misleading advertising by RB

10  when Plaintiff purchased Digestive Advantage, and therefore Plaintiff lacks

11  standing to pursue her FAL claim; and/or

12      7.      Alternatively, RB is entitled to judgment as a matter of law on

13  Plaintiff's Fourth Claim for Violation of the CLRA, because the undisputed facts

14  show that Plaintiff did not rely on any allegedly false or misleading advertising by

15  RB when she purchased Digestive Advantage, and therefore Plaintiff lacks standing

16  to pursue her CLRA claim; and/or

17      8.      Alternatively, as a matter of law, Plaintiff lacks standing to pursue

18  injunctive relief because Plaintiff cannot establish a threat of future injury to her.

19      RB's Motion is based upon this Notice of Motion and Motion, the attached

20  Memorandum of Points and Authorities, the concurrently filed Statement of

21  Uncontroverted Facts and Conclusions of Law, the concurrently filed Declarations

22  of Adrianne E. Marshack and David Keller and the Exhibits attached thereto, all

23  pleadings, papers, and documents on file herein, and upon such other and further

24  matters as may be filed with the Court or presented at the hearing on this Motion.

25      This Motion has been filed after a meet and confer with Plaintiff's counsel,

26  as required by Local Rule 7-3, which occurred on August 10, 2018.  (Declaration of

27  Adrianne E. Marshack, ¶ 31.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

1

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

1    Dated:     August 20, 2018        MANATT, PHELPS & PHILLIPS, LLP

2                                            Robert H. Platt
Adrianne E. Marshack

3

4                                           By: */s/ Adrianne E. Marshack*

5                                                  Adrianne E. Marshack

6                                            Attorneys for Defendant
RECKITT BENCKISER LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

2

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

### A.   Introduction

After being denied class certification,[2] Plaintiff Marilyn Cochoit ("Plaintiff") has elected to proceed with this lawyer-driven action individually, allegedly to seek redress for her $19.49 purchase of probiotic supplements.

Plaintiff admitted that she was not deceived when she purchased Digestive Advantage products (the "Products") several times between 2012 and 2016. Rather, only after Plaintiff was solicited by her attorney to become a putative class representative did she adopt her counsel's recycled and self-serving theory of false advertising.  Plaintiff ***has no independent belief that the advertising for the Products was false or misleading***.  Plaintiff has merely accepted her attorney's theory without bothering to verify whether her attorney's theory is correct.

This case is typical of the "shakedown schemes" that California consumer protection laws were designed to guard against: An attorney who made $300,000 in a former lawsuit is once again alleging the same theories of liability relating to the same product line.  Attorney Marron went in search of a pliable plaintiff, and then convinced her that she had been deceived.

The undisputed facts establish that Plaintiff cannot meet her burden of demonstrating any of the following necessary elements of her claims: (1) that Defendant Reckitt Benckiser LLC ("RB") omitted a material fact; (2) that the "100x better survivability" claim is false or misleading; (3) that Plaintiff did not receive benefits from the Products and, therefore, suffered any compensable harm (past or future); or (4) that Plaintiff actually relied on the advertising that she now claims is false and misleading, or on any alleged omissions by RB.  Consequently, it is respectfully submitted that summary judgment be granted with respect to all of

---

[2] Plaintiff's class claims were dismissed on July 27, 2018.  (*See* ECF No. 99.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff's claims.

**B.** **Summary of Relevant Uncontroverted Facts**

    **1.** **Plaintiff Purchased Digestive Advantage Several Times and Never Had Any Complaints Until She Was Solicited by Her Attorney.**

Plaintiff's Complaint focuses on her purchase of one bottle of Digestive Advantage gummy probiotics at Costco in February 2016 for $19.49. (Statement of Uncontroverted Material Facts ["UMF"] ¶ 19.) Plaintiff purchased Digestive Advantage probiotic products at least twice prior to her 2016 purchase, in approximately 2012 and 2013—facts that Plaintiff omitted from her Complaint. (UMF ¶¶ 2-3, 12.)

Plaintiff's 2016 purchase of Digestive Advantage at Costco was an impulse purchase. Plaintiff had not planned on purchasing probiotics, but instead decided to buy a bottle of Digestive Advantage Gummies that day because she liked gummies. (UMF ¶¶ 20-21.):

> "Q: Were you just walking down the supplements aisle and saw Digestive Advantage and decided to purchase it?
> A: Yes, I think so.
> Q: What made you purchase it on that day?
> A: Honestly, that there were gummies.
> …
> Q: Did you like the taste of the gummies?
> A: That's why I bought them, I hate to tell you."

(*Id.*)

The first few times Plaintiff purchased Digestive Advantage in 2012-2013, she admittedly did not rely on any advertising for the Products. (UMF ¶¶ 9, 11-16.) Plaintiff initially purchased Digestive Advantage at a CVS or Rite Aid, also on an "impulse"—she was considering purchasing probiotics when she entered the store, but cannot recall why she purchased Digestive Advantage as opposed to purchasing any other brands that day. (*Id.* ¶¶ 3, 9-11.)

1     Plaintiff purchased Digestive Advantage again in October 2013 online on
2  Amazon.com.  She visited the Amazon website specifically intending to purchase
3  probiotics, although not any particular brand.  (UMF ¶¶ 12-14.)  Plaintiff decided to
4  purchase Digestive Advantage after reading the Amazon reviews, and she did not
5  rely on anything other than the customer reviews when making her purchase.  (*Id.*
6  ¶¶ 15-16.)  Around the time of her second purchase in October 2013, Plaintiff did
7  some research about BC[30] online.  (*Id.* ¶ 17.)

8     **2.    The Alleged False Advertising for Digestive Advantage.**

9     Between Plaintiff's 2012-2013 purchases of Digestive Advantage and her
10  2016 purchase, only ***one single*** advertising claim has changed for the Products.
11  (UMF ¶ 26.)  When Plaintiff made her first purchases of the Products, the
12  advertising for Digestive Advantage said that the active probiotic in the Products—
13  BC[30]—survived stomach acid to reach the intestines (*i.e.*, "survivability") "10x
14  better" than those found in yogurt and other leading probiotic brands.  (*Id.* ¶ 18.)  In
15  July 2015, RB changed this advertising to state that BC[30] had "100x better
16  survivability" than the probiotics found in yogurt and other leading probiotic
17  brands.  (*Id.* ¶¶ 1, 26.)  Plaintiff believes she has seen commercials for Digestive
18  Advantage, but cannot recall when she saw them or what, specifically, they said
19  (*i.e.*, whether they claimed to survive 10x better or 100x better than other probiotic
20  brands).  (*Id.* ¶ 27.)

21     A few months after her 2016 purchase of Digestive Advantage, Plaintiff was
22  recruited to become a plaintiff in this action.  Plaintiff filled out a form online,
23  which asked if she had used the Products, and was then contacted by Attorney
24  Marron.  (UMF ¶ 28.)  When Attorney Marron contacted Plaintiff, Plaintiff
25  admittedly had no independent belief that any advertising for Digestive Advantage
26  was false or misleading.  (*Id.* ¶¶ 42-47.)[3]  Attorney Marron then told Plaintiff his

27

28  _____

[3]     "Q: Why did you file a lawsuit against Reckitt Benckiser?

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
COSTA MESA

3

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

theory—that the Products don't work because they allegedly don't germinate in the intestines, and therefore claims about the Products' "survivability" are irrelevant and misleading.  Plaintiff blindly adopted Attorney Marron's theory, without reviewing any studies or doing any independent investigation to verify whether his legal theory had any merit.  (UMF ¶¶ 42-47.)  Plaintiff had no prior understanding of probiotic germination before talking with Attorney Marron; any knowledge that Plaintiff has about the subject originated with her attorneys.  (*Id.* ¶ 45.)  In fact, when asked at her deposition *why* she believed the advertising for Digestive Advantage was false or misleading, Plaintiff could not answer without revealing her communications with her attorneys.  (*Id.* ¶ 47.)

Attorney Marron failed to disclose to Plaintiff prior to her filing this lawsuit that he had advanced the same theory in a prior lawsuit (when the claim was 10x better survivability), which he had settled in exchange for his receiving nearly $300,000 in attorneys' fees without requiring any changes to the survivability claims or the addition of language relating to germination that he now claims is a material omission.  (UMF ¶¶ 34, 50-53.)

Plaintiff lent her name to a Complaint that alleges the following causes of action: (1) fraud by omission; (2) violation of California's Unfair Competition Law, Business & Professions Code § 17200 ("UCL"); (3) violation of California's False Advertising Law, Business & Professions Code § 17500 ("FAL"); and (4) violation of the California Consumers Legal Remedies Act ("CLRA").  (ECF No. 1.)

Plaintiff apparently had little understanding of what she had agreed to do when lending her name to this lawsuit, because she never anticipated having to

---

. . .
A: Because I believe the label is misleading.
Q: And you gained that understanding from speaking to the Law Offices of Ron Marron, correct?
A: Correct."
(UMF ¶ 42.)

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Costa Mesa

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

testify.  (UMF ¶ 54.)

### 3.   Plaintiff's Claims Are Premised Solely on a Misrepresentation (or Misunderstanding) of a Single Study.

The gravamen of this entire action is Plaintiff's (or rather, her counsel's) allegation that a single published study "indicate[s] a large fraction of the $BC^{30}$ spores [in Digestive Advantage] fail to germinate under conditions found in the human gut, and would therefore remain dormant, passing out of the body without multiplying."  (UMF ¶ 30.)  Plaintiff contends that this information constitutes a material omission and makes the "100x better survivability" claim false and misleading because, according to Plaintiff, if $BC^{30}$ does not germinate, Digestive Advantage cannot provide any benefit regardless of how much of the probiotic survives.  (*Id.* ¶ 29.)

Plaintiff's *sole* basis for alleging that $BC^{30}$ does not germinate in the intestines is a single study titled "Survival and metabolic activity of the GanedenBC30 strain of *Bacillus coagulans* in a dynamic in vitro model of the stomach and small intestines"[4] ("the 2010 Lactose Study").  (UMF ¶ 31.)  Plaintiff relies on language in the 2010 Lactose Study which states that "[t]he survival of GanedenBC$^{30}$ was high (70%), although germination of the spores was minimal (<10%) *under the conditions tested*."  (*Id.* ¶ 32.)

Plaintiff misrepresents the 2010 Lactose Study's findings and significance. As made clear by the Study itself, the Study was not focused on germination (or growth) of $BC^{30}$ or on the wide range of health benefits that the Products could provide.  Rather, the "aim of the [2010 Lactose S]tudy was to determine the survival and activity of a particular strain of *B. coagulans* known as GanedenBC$^{30}$, a commercial product, in the upper GI tract," and whether $BC^{30}$ would "aid in digestion of lactose and milk protein . . . and fructose."  (UMF ¶ 36.)  Because of

---

[4] The *Burton* Action also relied on the 2010 Lactose Study.  (UMF ¶ 34.)

the narrow focus of the 2010 Lactose Study, the *in vitro* model of the gut used for the Study did not contain all the dozens of nutrients that would commonly be found within the human intestines and used as food by BC[30] to facilitate germination. (UMF ¶ 37.)[5]  Rather, the 2010 Lactose Study model contained only *one* nutrient at a time in order to isolate and test the effect of BC[30] on the digestion of each subject nutrient.  (*Id.*)

The 2010 Lactose Study expressly and specifically noted that because the human intestines have many more nutrients than were contained in the Study model, BC[30] spores would be expected to germinate in the human intestines in greater numbers than in the Study.  (UMF ¶ 38.)[6]  Significantly, the 2010 Lactose

---

[5] The 2010 Lactose Study specifically noted:

> [D]uplicate experiments were performed by adding the same amount of [BC30] spores to a 200 ml lactose solution (5% w/v in water), a fructose solution (5% w/v in water), or milk.  The outcome of these latter experiments revealed information on the effect of GanedenBC[30] on the digestive of lactose, fructose, and milk protein, respectively.  It should be noted that in these experiments, there was no full complements of substrates that bacteria need for their growth, such as carbon and nitrogen sources, due to reasons of interference with the analysis on survival and more importantly lactose, fructose and mild protein utilization.

(*See* UMF  ¶ 37.)

[6] Specifically, the 2010 Lactose Study stated:

> [I]n its real use, GanedenBC30 would be consumed as part of a standard diet.  Due to reasons of interference with the analysis on survival and more importantly lactose, fructose and milk protein utilization, no meal was added to the [Study model] besides the test product.  This meant that the substrates available in the model (endogenous secretion fluids) were not sufficient for optimal bacteria growth.  If the bacteria were added in the matrix of a complete meal, greater vegetative growth and metabolism of the strain would be expected.  In that case,

Study ultimately concluded that even with the relatively low germination rate in the Study, BC[30] had the potential to aid in the digestion of lactose and fructose—*i.e.*, to provide "significant" digestive health benefits.  (UMF ¶ 39.)

During the two years of this litigation, Plaintiff has not presented *any* evidence that the probiotic in Digestive Advantage—BC[30]—fails to germinate in the gut or fails to provide any digestive or other health benefits (even with the germination numbers in the 2010 Lactose Study).  (UMF ¶ 33.)

### 4.   Plaintiff Used Probiotics for a Variety of Health Benefits.

Plaintiff describes herself as "health conscious."  Plaintiff was in a nursing program in college, and for at least the past decade has been receiving health-related publications that, among other things, discuss dietary supplements.  (UMF ¶¶ 55-56.)  Plaintiff learned about the benefits of probiotics from unidentified commercials, magazines, information on the internet, her mother, and a "supplement health nut friend."  (*Id.* ¶ 5.)  A doctor also recommended the daily consumption of probiotics to one of Plaintiff's family members.  (*Id.* ¶ 6.)

Digestive Advantage was not the first, nor only, probiotic brand that Plaintiff has used.  (UMF ¶¶ 4, 7, 57-58.)  At the time of Plaintiff's first purchase of probiotics—which was not Digestive Advantage—Plaintiff had a cold "and thought [probiotics] would help [her] immune system."  (*Id.* ¶ 7.)  Plaintiff has used probiotics for their varied "health benefits," including improving her immune system, more consistent bowels, and "better intestinal bacteria."  (*Id.* ¶ 8.)

### 5.   Plaintiff Concedes That She May Have Received Benefits From the Digestive Advantage Probiotics.

Plaintiff concedes that ***she may have received benefits*** from using Digestive

---

the assumed increase in germination would give an increased utilization of lactose, fructose and protein.  (*See* UMF ¶ 38.)

Advantage products—she just does not know one way or another.  (UMF ¶ 59.) Plaintiff admits it is virtually impossible for her to know whether she received any health benefits from probiotics:

> Q: . . . [D]id you experience any benefit when you used [another probiotic brand] relating to your immune system?
>
> A: I don't understand the question.
>
> Q: Do you understand what a health benefit is?
>
> A: I do.  But you're asking me did it help my immune system?  How do you—how do you answer a question like that?  Did I get a cold next year?  Did I get sick?  I don't know if it helped my immune system.  I had a flu shot the next year.  That could have stopped me from catching a flu.  It is not something you can, necessarily, measure.
>
> . . .
>
> A: I cannot attribute any specific health benefits I got from the probiotics themselves.  I can't say the benefits I was receiving were [from] better nutrition, more exercising or if it came specifically from the probiotics.
>
> Q: Okay.  So you can't say whether they gave you benefits or not, correct?
>
> A: No, I can't say.

(UMF ¶ 60.)

Plaintiff's only complaint about Digestive Advantage is that she did not see "remarkable benefits" because the probiotics did not completely relieve her gas (*i.e.*, she "still had, from time to time, air in [her] pipes"), despite admittedly only taking half the recommended dosage for digestive issues.[7]  (UMF ¶¶ 61, 63-64.)

---

[7] The "DIRECTIONS" on the bottle of Digestive Advantage Gummies provides: "Chew two (2) gummies daily to support digestive and overall health.*  Chew two (2) gummies **twice daily** to reduce occasional digestive upsets, lessen minor abdominal discomfort, and help relieve occasional diarrhea.1*"  (UMF ¶ 63.) Plaintiff took only two gummies a day, rather than the four recommended for

# ARGUMENT

## I.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  *Id.* at 248.

A defendant moving for summary judgment bears the initial burden of either producing evidence that negates an essential element of a plaintiff's claim or by showing that the plaintiff does not have enough evidence of an essential element to satisfy her ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once a defendant makes this showing, the burden then switches to the plaintiff to produce some "significant probative evidence" supporting her claims.  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).  If the plaintiff fails to make this showing, and "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment must be granted.  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation omitted); *Celotex*, 477 U.S. at 322.

specific digestive problems.  (*Id.* ¶ 64.)

## II.

## SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CANNOT ESTABLISH THAT RB OMITTED MATERIAL FACTS

### A.    Plaintiff Cannot Establish That RB Omitted a Material Fact

To prevail on a claim for fraud by omission, Plaintiff must establish that (1) RB concealed a material fact, (2) RB was under a duty to disclose the fact to Plaintiff, (3) RB intentionally concealed or suppressed the fact with the intent to defraud Plaintiff, (4) Plaintiff was unaware of the fact and would not have purchased Digestive Advantage if she had known of the concealed fact, and (5) as a result of the concealment of the fact, Plaintiff sustained damage. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011). Inherent in a fraud by omission claim is the requirement that the omitted information actually be a ***fact***. *Id.* This is where Plaintiff cannot meet her burden as a matter of law.

Plaintiff alleges that RB omitted the purported "fact" that BC$^{30}$ does not "settle, colonize, or germinate in the human stomach or intestines and thus do[es] not provide" any health benefits. (UMF ¶ 29.) Plaintiff has been able to identify only *one single study* that allegedly supports her claim that BC$^{30}$ does not germinate in sufficient numbers to provide any benefits—the 2010 Lactose Study. (*Id.* ¶ 31.)

On its face, the 2010 Lactose Study undermines Plaintiff's claims. As indicated by the Study itself, the 2010 Lactose Study had a narrow focus—to test the survivability of BC$^{30}$ and its effect on the digestion of lactose, fructose, and milk protein. (UMF ¶¶ 35-36.) Because of this narrow focus, the testing model isolated only one nutrient that would be in the gut at a time, not the full panoply of nutrients that would be in a typical human gut and that would be used by BC$^{30}$ for food to help it germinate. (*Id.* ¶ 37.) The Study found that BC$^{30}$ actually ***did*** germinate, even under the conditions in the Study, and the Study noted that in a typical human gut, the germination rate would be expected to be even higher. (*Id.* ¶ 38.) However, even with the germination rate in the Study, the Study expressly

concluded that the "benefit of ingestion of GanedenBC$^{30}$ would be significant." (*Id.* ¶ 39.)

Because Plaintiff cannot provide evidence that BC$^{30}$ does not germinate in sufficient numbers to provide any health benefits, Plaintiff cannot establish as a matter of law that RB concealed a material "fact," and her fraud by omission claim fails as a matter of law.

## B.  Plaintiff Cannot Establish That the "100x Better Survivability" Claim Is False or Misleading

To state her claims under the UCL, FAL, and CLRA, Plaintiff must identify the advertising claims that she contends are allegedly false or misleading.[8]  *See* Cal. Bus. & Prof. Code § 17200, 17500; Cal. Civ. Code § 1770(a).  Plaintiff testified that the ***only*** advertising claim for Digestive Advantage that she (or rather, her attorney) believes is false or misleading is the claim that BC$^{30}$ has "100x better survivability" than the probiotics found in yogurts and other leading probiotic brands.  (UMF ¶ 40.)  Plaintiff also testified that she does not believe the "100x better survivability" claim is literally false, but she is alleging in this lawsuit that the statement is misleading.  (*Id.* ¶ 41.)

Whether an advertisement is "misleading" must be judged by the effect it would have on a reasonable consumer.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (citations omitted).  A reasonable consumer is "the ordinary consumer acting reasonably under the circumstances." *Id.* (citations omitted).  To prevail, Plaintiff must establish that the public was likely to be deceived by the "100x better survivability" claim. *Id.*

Plaintiff alleges that the "100x better survivability" claim is misleading

---

[8] As previously admitted by Plaintiff in her Motion for Class Certification, her claims under the UCL, FAL, and CLRA are based on allegedly "fraudulent" conduct, rather than conduct that is "unlawful" or "unfair."  (UMF ¶ 48.)

because "published studies 'indicate that a large fraction of the BC30 spores fail to germinate under conditions found in the human gut, and would therefore remain dormant, passing out of the body without multiplying." (UMF ¶ 30.)  Plaintiff, again, relies solely on the 2010 Lactose Study to support her contention that the "100x better survivability" claim is false and misleading.  (*Id.* ¶ 31.)

As stated above, BC$^{30}$'s alleged lack of germination, and therefore lack of benefits, is not supported by the 2010 Lactose Study—it is no more than a fabrication by Plaintiff's counsel.  It defies credulity that RB should have to disclose information that is not accurate, or that Attorney Marron's inaccurate claims would be material to anyone.  Consequently, Plaintiff cannot establish that because RB did not disclose information that is false, a reasonable consumer is likely to be deceived.

Further, and even assuming *arguendo* that Plaintiff's theory were true, she cannot establish that the public was likely to be deceived by the "100x better survivability" claim as a result of the lack of information relating to germination, because she cannot establish that members of the public are aware about germination and probiotics.  *See Reed v. NBTY, Inc.*, No. EDCV-13-0142 JGB(OPx), 2014 WL 12284044, at *16 (C.D. Cal. Nov. 18, 2014) (the Court cannot rely on a study in a scientific journal which most purchasers have not read to determine what a reasonable consumer would believe when reading defendants' claims).  Plaintiff herself, who is admittedly "health conscious," studied nursing in college, and has read health-related publications for over a decade, did not know anything about the germination of probiotics until she spoke with her attorney after being recruited for this lawsuit.  (UMF ¶¶ 55-56.)

Because Plaintiff cannot establish that the "100x better survivability" claim is false or misleading, her UCL, FAL, and CLRA claims fail as a matter of law.

# III.

## ALTERNATIVELY, RB IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CANNOT ESTABLISH THAT SHE WAS DAMAGED BY OR RELIED ON ANY ALLEGED OMISSIONS OR FALSE OR MISLEADING STATEMENTS

### A.   Each of Plaintiff's Claims Also Fails as a Matter of Law Because Plaintiff Cannot Establish That She Was Damaged

Each of Plaintiff's causes of action requires that she suffered damages as a result of conduct by RB.  *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (fraud by omission requires that a plaintiff was damaged as a result of the concealment of the material fact); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 929 (2010) (to obtain relief under the CLRA, the plaintiff must have suffered some kind of damage caused by a practice deemed unlawful); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008) (the UCL requires an injury caused by the conduct of the defendant to obtain relief); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-26 (2011) (noting that the standing requirements for the UCL and FAL—injury and causation—are the same).

Even if a plaintiff was induced to purchase a product she would not otherwise have purchased, the plaintiff is not damaged as long as she received the benefit of her bargain.  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1094-95 (C.D. Cal. 2015) (dismissing UCL and FAL claims because plaintiff received the benefit of his bargain); *Hall,* 158 Cal. App. 4th 847, 854-55 (2008) (same, dismissing UCL claim); *Thompson v. Automobile Club of Southern California*, 217 Cal. App. 4th 719, 729-30 (2013) (noting that a plaintiff who received the benefits paid for was not damaged and cannot recover).

Plaintiff alleges that the damages she has suffered are that "the Products have not worked as advertised, nor provided any of the promised benefits," and thus she wasted $19.49 because she would not have purchased the Products if RB had not misrepresented the Products' attributes. (UMF ¶ 49.)  However, Plaintiff cannot

establish as a matter of law that she did not receive any health benefits from Digestive Advantage, and therefore cannot establish that she was damaged as a matter of law.

Plaintiff admittedly used probiotics for multiple health benefits, including "better immune system, more consistent bowels, [and] better intestinal bacteria." (UMF ¶ 8.) Plaintiff conceded under oath that she may have received health benefits from Digestive Advantage.[9] (*Id.* ¶ 59.)

Plaintiff's only complaint about Digestive Advantage was that the gummies did not completely cure her of gas. (UMF ¶ 61.) This does not establish that she did not receive *any* benefit, or the benefit of her bargain. In addition, as to Plaintiff's residual gas: (1) relieving gas is not an advertising claim that is made for the gummies Plaintiff purchased (Digestive Advantage has a special "Gas Defense Formula" for that, which Plaintiff did not purchase) (*Id.* ¶ 62); (2) Plaintiff purchased Digestive Advantage in February 2016 on an impulse because they were gummies, not to relieve any specific symptoms (such as gas) (*Id.* ¶¶ 20-21); and (3) Plaintiff did not take the proper dosage recommended for relieving gastrointestinal discomfort; she took *half* the recommended dosage. (*Id.* ¶¶ 63-64.) Consequently, Plaintiff's apparent after-the-fact disappointment that she still had "air in her pipes" from time to time does not establish that she was damaged by any alleged false advertising or material omissions relating to the Products. *See Stanley v. Bayer Healthcare LLC*, No. 11-CV-862-IEG BLM, 2012 WL 1132920, *5-9 (S.D. Cal. April 3, 2012) (granting summary judgment to defendant where plaintiff failed to establish that probiotics did not work for purposes for which it was advertised, where her expert conceded that probiotics might work for some consumers, and where plaintiff purchased the product to assist with a condition for which it was not advertised, holding, "Liability for false advertising under the UCL and CLRA

---

[9] Plaintiff also enjoyed eating the Digestive Advantage gummies. (UMF ¶¶ 21-23.)

cannot be based upon the fact that PCH did not work for Plaintiff in the way she believed (but Defendant did not represent) it would"); *Reed*, 2014 WL 12284044 at *15-16 (granting summary judgment on UCL, FAL, and CLRA claims where plaintiffs did not produce evidence that the product does not work for the purposes for which it is advertised, when plaintiffs did not get the benefits they expected but that were not advertised).

Because Plaintiff cannot establish that she suffered any damages as a result of any alleged false advertising or omissions by RB, all of Plaintiff's claims fail as a matter of law.

**B.     Alternatively, Plaintiff's Fraud by Omission Claim Fails Because Plaintiff Cannot Establish That She Would Not Have Purchased Digestive Advantage If the Alleged Omitted Information Had Been Disclosed**

Reliance is an essential element of fraud claims based on an omission. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 807 (2007) ("Actual reliance is also an element of fraud claims based on omission"); *disapproved of on other grounds in Kwikset,* 51 Cal. 4th at 337. "[A]ctual reliance for the purpose of fraud by omission occurs only when the plaintiff reposes confidence in the *material completeness* of the defendant's representations, and acts upon this confidence." *Buckland*, 155 Cal. App. 4th at 808.

Consequently, a plaintiff can establish reliance on an omission only by establishing that had the omitted information been disclosed, plaintiff (1) "would have been aware of it," and (2) would have "behaved differently." *Mirkin*, 5 Cal. 4th at 1093; *Buckland*, 155 Cal. App. 4th at 807 (holding that plaintiff did not rely on alleged fraudulent omissions when she suspected packaging and labeling for the product was false or misleading and bought the products solely to pursue litigation upon the vindication of her suspicions).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Costa Mesa

15

DEFENDANT RECKITT BENCKISER LLC'S
MOTION FOR SUMMARY JUDGMENT

1    Plaintiff alleges that the information RB fraudulently omitted was that BC[30]

2   does not "settle, colonize, or germinate in the human stomach or intestines and thus

3   do[es] not provide" any health benefits.  (UMF ¶ 29.)  Even assuming, *arguendo*

4   that this is a "fact" (which it is not), Plaintiff cannot establish that she relied on any

5   omissions when purchasing Digestive Advantage.

6    Plaintiff started using probiotics after learning about the benefits of the

7   supplement from various sources, including unidentified commercials, magazines,

8   information on the internet, her mother, a friend, and a doctor's recommendation.

9   (UMF ¶¶ 5-6.)  Plaintiff had tried probiotics before her first purchase of Digestive

10  Advantage, was considering trying them again prior to her initial purchase of the

11  Product, and specifically intended to purchase probiotics when she chose Digestive

12  Advantage the second time, before the "100x better survivability" claim was ever

13  made.  (UMF ¶¶ 1-4, 7, 9, 12-13.)  In 2012, Plaintiff did not rely on *any* advertising

14  claims when she purchased Digestive Advantage at a CVS or Rite Aid.  (*Id.* ¶ 11).

15  When Plaintiff purchased Digestive Advantage in 2013 on Amazon.com, Plaintiff

16  admits that she relied **solely** on positive Amazon customer reviews for the Products,

17  not the Products' advertising.  (*Id.* ¶¶ 12-16.)  Plaintiff cannot therefore establish

18  that if the alleged omitted information had been disclosed, she would (1) have been

19  aware of the information, or (2) would not have purchased the Products as a result.

20   Additionally, Plaintiff admits that she bought Digestive Advantage in 2016

21  as an impulse purchase because she liked gummies.  (UMF ¶¶ 19-21.)  Plaintiff did

22  not have the intention of purchasing probiotics when she went to Costco that day,

23  and was not comparison shopping between different brands.  (*Id.* ¶ 20.)  Rather, the

24  fact that the Product was in gummy form is what induced her purchase, which is

25  consistent with Plaintiff's admitted enjoyment of gummy candy.  (*Id.* ¶¶ 21-23.)

26  Plaintiff does not recall any claims made on the bottle of Digestive Advantage that

27  she purchased other than the "100x better survivability" claim and the symbol for

28  BC[30], and does not believe she read many of the statements and disclosures that

*were* listed on the bottle.  (*Id.* ¶¶ 24-25.)  Consequently, Plaintiff cannot present any evidence to suggest that if there had been any information relating to germination on the package, she either would have been aware of the information or would not have purchased the Digestive Advantage gummies that day.

Finally, Plaintiff admits that she has merely adopted her attorney's theory that germination of probiotics is required in order for probiotics to provide any benefits, and has done no independent research to determine whether his theory is true.  (UMF ¶¶ 41-44.)  Plaintiff's only knowledge about germination of probiotics she learned from her attorneys *after* she was solicited to become a party to this lawsuit.  (*Id.* ¶¶ 45-46.)

Plaintiff cannot therefore establish that if on any of the occasions on which she purchased the Products the packaging had provided information about germination, she would have been aware of the disclosures, would have understood what they meant, or would not have purchased Digestive Advantage as a result. *Mirkin,* 5 Cal. 4th at 1093; *Buckland,* 155 Cal. App. 4th at 807.

Because Plaintiff cannot establish the element of actual reliance, Plaintiff's fraud by omission claim fails as a matter of law.

## C.  **Alternatively, Plaintiff's UCL, FAL, and CLRA Claims Fail Because Plaintiff Cannot Establish That She Relied on the Allegedly False Advertising When Purchasing the Products**

A plaintiff has standing to bring an action under the UCL and FAL only if she can show that she "has suffered injury in fact and has lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added).  In other words, a plaintiff's injury must be ***caused by*** the defendant's allegedly wrongful conduct.  *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1349 (2009).  Because the unfair competition advanced by Plaintiff involves a theory of false advertising and misrepresentations to consumers, to establish the causation element of her UCL and FAL claims, she must demonstrate that she ***actually relied*** on the allegedly false advertising.  *Kwikset*, 51 Cal. 4th at

326-27; *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (holding that the "actual reliance" requirement applied regardless of whether plaintiff called the conduct "unlawful," "unfair," or "fraudulent" because the UCL claim was based on a theory of false advertising).

Reliance is proved by showing that the alleged misrepresentation was an "immediate cause" of the plaintiff's injury-producing conduct. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). A plaintiff can show that a misrepresentation is an "immediate cause" of her conduct by showing that, in its absence, the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct. *Id.* Although reliance on the truth of the alleged misrepresentation need not be the *sole* or even decisive factor influencing the plaintiff's conduct, the misrepresentation must have "played a substantial part" and was therefore a "substantial factor" in influencing the plaintiff's decision. *Id.* at 326-27.

A plaintiff asserting a claim under the CLRA must also have suffered damage "as a result of" the defendant's allegedly unlawful conduct, "making causation a necessary element of proof." Cal. Civ. Code § 1780(a); *Durell*, 183 Cal. App. 4th at 1366-67. As with Plaintiff's UCL and FAL claims, she must demonstrate "**actual reliance**" on the alleged false advertising and misrepresentations to prevail on her CLRA claim. *Cohen v. DIRECTV*, 178 Cal. App. 4th 966, 980 (2009). Plaintiff cannot make this showing.

Plaintiff testified that the **only** advertising claim for Digestive Advantage that she (or rather, her attorney) believes is false or misleading is the claim that BC[30] has "100x better survivability" than the probiotics found in yogurts and other leading probiotic brands. (UMF ¶ 40.) However, Plaintiff purchased Digestive Advantage *at least twice* before the "100x better survivability" claim was ever made for the Product (in July 2015), without relying on any advertising for the Products. (*Id.* ¶¶ 1-4, 7, 9, 11-16.) Plaintiff's purchases and experiences with Digestive Advantage prior to the "100x better survivability" claim being made

1   undermine any contention that Plaintiff relied on the 100x claim when she

2   purchased Digestive Advantage again in February 2016.

3       In addition, Plaintiff purchased Digestive Advantage in February 2016 on an

4   impulse "because they were gummies." (UMF ¶¶ 20-21.) Plaintiff repeatedly

5   testified that the primary reason she purchased the Product that day was that "they

6   were gummy vitamins." (*Id.* ¶ 21.) She subsequently reaffirmed that she had

7   purchased the Product because they were gummies rather than because of the 100x

8   claim. (*Id.* ¶ 21 ["Q: Did you like the taste of the gummies?  A: That's why I

9   bought them, I hate to tell you."].) Thus, Plaintiff cannot establish that the 100x

10  claim was a "substantial factor" in her purchase of any Digestive Advantage

11  Products.

12      Proposition 64 created the reliance/causation requirement in the UCL.  The

13  purpose of the Proposition 64 amendments was to foreclose the ability of an

14  "unaffected plaintiff"—the "sham creation of attorneys"—to bring frivolous

15  lawsuits with no public benefit or accountability to the public. *See Hall v. Time*

16  *Inc.*, 158 Cal. App. 4th 847, 857 (2008).  In other words, Proposition 64 was

17  intended to prevent attorneys from "creating" a client with standing to sue by

18  directing a willing individual who was not deceived by the advertising to make a

19  purchase. *Id.*  Here, we have a Plaintiff who was **not** deceived by the advertising

20  for Digestive Advantage at the time she made her purchase(s) being belatedly

21  transformed into a litigant after being convinced by an attorney that she had been

22  misled, so the attorney could file suit and seek attorneys' fees.

23      Because Plaintiff cannot establish that "in all reasonable probability" she

24  would not have purchased Digestive Advantage in February 2016 if the "100x

25  better survivability" claim had not been made or any language relating to

26  germination had been included on the packaging, she cannot establish the reliance

27  element of her UCL, FAL, and CLRA claims.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## ALTERNATIVELY, PLAINTIFF LACKS STANDING TO PURSUE INJUNCTIVE RELIEF

For Plaintiff to have Article III standing to seek injunctive relief, there has to be a real and immediate threat of continued or future harm to her.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (2003).  In the context of false advertising, a plaintiff lacks standing to obtain an injunction if she has not expressed an intention to purchase the products in the future, because the Plaintiff cannot demonstrate a likelihood of future injury.  *Luman v. Theismann*, 647 Fed. Appx. 804, 807 (9th Cir. 2016).  Here, Plaintiff has not expressed any intention to purchase any Digestive Advantage Product in the future.  (UMF ¶ 66.)  Nor is she likely to do so, given her apparent opinion that Digestive Advantage is "useless" and "worthless."  (*Id.* ¶ 65.)  Because Plaintiff cannot demonstrate a likelihood of future injury, she lacks standing to seek injunctive relief.

## CONCLUSION

For the foregoing reasons, the undisputed facts establish that all of Plaintiff's claims for relief fail as a matter of law.  Consequently, RB respectfully requests that the Court enter judgment in RB's favor on each of Plaintiff's claims, and grant summary judgment or, alternatively, partial summary judgment.

Dated:    August 20, 2018

MANATT, PHELPS & PHILLIPS, LLP
Robert H. Platt
Adrianne E. Marshack


By:*/s/ Adrianne E. Marshack*
     Adrianne E. Marshack

Attorneys for Defendant
RECKITT BENCKISER LLC

320667403